*King* vs. *Bailey.*

## KING *vs.* BAILEY.

1. Possession of personal property by the mortgagor, after the mortgage, is not fraudulent and void *in law*, as against creditors, prior or subsequent.—See S. C., 6 Mo. Rep., 575; Shepherd *vs.* Trigg, 7 Mo. Rep., 151; Ross *vs.* Crutsinge., *Ibid.*, 245.

2. The act of February 11, 1835, entitled, "An act to prevent fraud," (Rev. Stat., 1835, p. 283, 284,) does not require that conveyances of goods and chattels, made for a valuable consideration, should be recorded. The act avoids conveyances of *goods and chattels*, for a consideration *not deemed valuable in law*, unless possession actually and *bona fide* accompany the conveyance or gift, or unless the same is acknowledged and recorded in the like manner as deeds for land.

3. In a suit by a mortgagee of personal property, against a purchaser of the mortgaged property, under execution against the mortgagor subsequent to the mortgage, the mortgagor is a competent witness for the mortgagee.

4. The bare possession of a chattel by a mortgagor, with the consent or permission of the mortgagee, and determinable at his will, is not the subject of sale under execution.

### APPEAL from Crawford Circuit Court.,

M. FRISELL, *for Appellant.*

1. The writing upon which Bailey claimed possession is a mortgage. King at least had the rights of Hinton, the mortgagor, by virtue of his purchase at constable's sale, of the negro girl, as the property of Hinton.—Rec., p. 12; Secus in New York, *sed vide* Stat. of Mo. 1835, p. 409.

2. The court instructed the jury that Hinton, the mortgagor, was a competent witness.

3. That Hinton, an interested witness, was allowed to testify to the jury, notwithstanding the objections and exceptions of the defendant, King.

4. The court below refused to permit legal and competent testimony, in behalf of the defendants below, to go to the jury.

SCOTT, *Judge, delivered the opinion of the Court.*

Bailey brought an action of detinue against King, for a negro girl mortgaged to Bailey by Jacob Hinton. Hinton was indebted to King, and King sued out execution against him, by virtue of which the negro was levied on and sold, and King became the purchaser. The negro, at the time of the execution of the mortgage, was permitted to remain as a nurse with the wife of Hinton, who was a relation of Bailey, and had a large family of children.

On the trial, Bailey obtained a verdict and judgment.

On the part of King, it was endeavored to be shown, that the transaction between Bailey and Hinton was fraudulent against King, who was a creditor of Hinton, and several instructions, involving the law on that subject, were asked, all

of which were given, except the following, namely, that if the jury believe, from the evidence, that after the execution of the mortgage of the slave, Joan, by Hinton to the plaintiff, that Hinton remained in possession of the said slave, then the mortgage of said slave is fraudulent and void, as regards the said defendant.

The court also refused the following instruction, that there was no evidence in the case that there was any bill of sale or other conveyance, transferring the slave in dispute from Hinton to Bailey, executed by Hinton, and duly recorded. The evidence on which this instruction was predicated was, the proof of the execution of the mortgage by Hinton at the trial, and the certificate of its being recorded by the clerk, though there was no evidence of its having been proved or acknowledged before any court or officer authorized to take the acknowledgment of deeds.

After the opinion of this Court, in the cases of Shepherd *vs.* Trigg, and Ross *vs.* Crutzingle, in the 7th vol. Miss. Reports, it need hardly be observed, that the court below committed no error in refusing the first instruction, first above set forth.

As regards the second of the said instructions, the law is equally clear. The statute for the prevention of frauds, (Rev. Code, 283,) does not require that conveyances of goods and chattels, made for a valuable consideration, should be recorded. It avoids conveyances or gifts of goods and chattels made for a consideration not deemed valuable in law, unless possession actually and *bona fide* accompanies the conveyance or gift, or unless the same is acknowledged and recorded in the like manner as deeds for lands. The assumption, that the mortgage was for a consideration not deemed valuable in law, was taking the matter in controversy for granted. It was for a valuable consideration, from aught to the contrary appearing to the court, and the instruction was, therefore, properly refused. It was certainly improper to read the certificate of the clerk, that the mortgage had been duly recorded, as it does not appear that it had ever been proved or acknowledged before it was recorded; but, as that testimony was wholly irrelevant, and not of a character to mislead the jury, and as we cannot see that such evidence could have influenced the verdict, the judgment will not be reversed on that ground.

It is objected, that the court erred in permitting Hinton to be examined as a witness for the plaintiff, Bailey. We cannot see what interest Hinton had that would disqualify him as a witness for Bailey. The case of Bland *vs.* Ansley, (2 New. Rep., 3 Starkie, 1355,) will show that Hinton was not a competent witness for King, for the effect of his evidence would have been to take Bailey's property to pay his own debt. Then, if he was liable over to both parties, his interest was equipoised, and he was competent. But, in fact, he would not have been responsible to Bailey, had the negro been recovered by King, for such a recovery could only have been had on the supposition that the transaction between Hinton and Bailey was fraudulent; and such being the fact, no action would have arisen from it to Bailey against Hinton. (Gardenier *vs.* Tubbs, 21 Wend., 169.) Another point made by the appellant was, that the equity of redemption of Hinton was subject to execution, and King becoming the purchaser

of the equity, he had a right to hold the slave until the equity of redemption was foreclosed by Bailey. The case of McNair *vs.* O'Fallon and Others, decided at this term of the Court, in which it was held, that an equity of redemption in lands might be sold under execution at law before the revised laws of 1825, stands upon considerations which do not affect this question. The eighteenth section of the execution laws declares, that the word levy, as used in that act, shall mean the actual seizure of the property by the officer charged with the execution.

The 43d section of the same act directs the officer, when the purchase money of any goods and chattels is paid, to deliver up to the purchaser such property. These injunctions of the law would be impracticable, if a mere equity of redemption, or the interest of a pledger in goods or chattels, could be sold under execution. The bare possession of a chattel by a mortgagor with the consent or permission of the mortgagee, and determinable at his will, would not be the subject of sale under an execution. Permission that a chattel may remain *with* one is not a permission that it may with another. If one merely permits his slave to remain during pleasure with his neighbor, has the neighbor such an interest in the slave as can be sold under execution? Would the consent of the master, that his slave might remain with a particular person, be construed to mean that any one might have the possession of him who purchased under an execution? We do not intend to convey the idea, by anything said, that a certain and determined interest in chattels, accompanied with the possession, however limited it may be, cannot be sold under execution.

There is no doubt that, by the common law, the interest of a mortgagor, pledgor, or lessor of goods could not be seized and sold under execution. In Bacon, (vol. 2, title, "Execution," 715,) it is held, that the sheriff cannot take in execution goods pawned or gaged for debt, nor goods demised or letten for years, nor goods destrained.

Judgment affirmed.

TOMPKINS, J., dissenting.