EGGLESTON *et al.*, plaintiffs in error, *vs.* MUNDY, defendant in error.

An officer cannot levy upon personal property which is mortgaged, whether in possession of the mortgagor or mortgagee, even if the mortgage is not due, unless it contains an express stipulation permitting the mortgagor to retain possession for a definite period—nor then, if that period has elapsed.

A chattel mortgage contained the following clause: "and, *provided*, that if the amount to be paid shall be paid in eleven months from date, this mortgage shall be void; but, in case of default, or if the said party of the first part shall sell, assign, or dispose of, or attempt to assign, sell, or dispose of the whole, or any part of the said goods and chattels, or remove, or attempt to remove, the whole, or any part thereof, from the town of Columbia, without the written assent of the party of the second part, it shall be lawful for the party of the second part to enter upon the premises of the party of the first part, or any place where the goods might be, and take possession thereof, and sell and dispose of the same." The clause in this mortgage was neither an express nor an implied covenant for possession by the mortgagor, and it lacked the requisite certainty as to time, to leave any interest therein in the debtor, subject to levy and sale on execution against him.

When an officer has levied upon goods, and, after offering them for sale, and, upon being informed of the existence of a mortgage upon them, changes his offer to a sale of the *defendant's interest* in the goods, and returns that he levied on the property and sold all the *debtor's right therein*, which was bid off by a stranger, the sale so made protects neither the officer nor the purchaser from liability to the mortgagee.

In all cases where goods are wrongfully sold, the owner has an election to replevy the property from the hands of the purchaser, or recover its value from the tortious vendor and purchaser.

Error to Jackson Circuit.

The action was trover brought by the defendant in error, as plaintiff below, to recover for one hundred and sixteen bushels of wheat, for which he declared. The defendants *jointly* pleaded the general issue, and gave notice that the wheat was the property of the defendant, George Watson, and was levied on and sold by the defendant Sutton to the defendant Covert, by virtue of an execution on a judgment

of which defendant Eggleston was assignee. The plaintiff proved title in the property by a chattel mortgage, dated September 21st, 1852, duly filed in the Town Clerk's office, on the 22d. The mortgage was for $100 and interest at ten per cent., to be paid in eleven months from date. It contained this clause : " or if the said party shall sell, assign or dispose of, or attempt to sell, assign or dispose of the whole or any part of said goods and chattels, or remove, or attempt to remove the whole or any part thereof, from the said town of Columbia, without the written assent of the party of the second part, then it shall be lawful for the party of the second part to take possession," etc. On the 9th of October, 1852, Sutton levied on the wheat. On the 19th of July, 1853, all the defendant's right to the wheat was sold, and bid off by a stranger. The wheat was delivered to the purchaser, and converted by him. The only question made at the trial was the offer by the defendants to show by the witness Hawley as follows : *Question*—"What did Sutton say, and what language did he use at the time he offered the wheat for sale after the reading of the chattel mortgage?" The Court refused to allow this question to be answered, and then the defendants offered to prove that Sutton said : " Very well, if you have got a chattel mortgage, I will offer for sale all the interest of George Watson," and the property was immediately struck off to Covert.

The Circuit Court for Jackson County, the Hon. David Johnson (before whom the cause was tried without a jury) presiding, rendered judgment for the defendant in error, upon which the plaintiff in error sued out this writ.

By the Court, WING, J.

The principal questions presented for our decision by this case, are :

Had the mortgagor any interest in the property sold which was liable to levy and sale on execution ?

Were the proceedings on the part of the constable and the plaintiffs, in the execution, such as to protect them from liability to the defendant in error?

The rights of parties to chattel mortgages were much discussed in the case of Tannehill *et al. vs.* Tuttle, decided at the last term of this Court, and reported in 2 Gibbs M. R., 105. In that case, we recognized the principle that, the general title being in the mortgagee, he is entitled to immediate possession of the property, to hold it until condition broken, *unless the parties otherwise stipulate in the mortgage*; and that without *such agreement*, the possession of the mortgagor (if suffered to retain the property) is deemed the possession of the mortgagee, so that he may reduce the property to possession at any moment, and may maintain trespass, or trover, or replevin, as the case may be, for any intermeddling with, or taking of the property by a third party, while in the possession of the mortgagor, equally as though such possession were actually in himself.

We do not now propose to review those propositions. They are not denied by the counsel in this case; but it is insisted for the plaintiffs, that by the terms of this mortgage, it was expressly agreed that the mortgagor should retain possession of the property, until the amount thereby secured should become due and payable; and, therefore, he had an interest which was liable to seizure and sale on execution.

The mortgage contains the following clauses, viz.: "To have and to hold all and singular the said goods and chattels herein granted and sold, etc., unto the said party of the second part forever, said goods and chattels now remaining and continuing in the possession of the said party of the second part, in the town of Columbia." It then provides, that if the amount to be paid is paid in eleven months from date, the mortgage shall be void; but in case of default, or "if the said party of the first part should sell, assign or dispose of, or attempt to assign, sell or dispose of the whole or any part

of the said goods and chattels, or remove or attempt to remove the whole or any part thereof from the town of Columbia, without the written assent of the party of the second part, it should be lawful for the party of the second part to enter upon the premises of the party of the first part, or any place where the goods might be, and take possession thereof, and sell and dispose of the same."

The levy and sale of the property by the constable occurred before condition broken, and when the property was in the possession of the mortgagor. Was the stipulation contained in the mortgage such as to give to the mortgagor a right to the possession of the property for any *definite period?* If it was not, the property was not subject to levy and sale on execution.

In Welch *vs.* Whittemore (25 *Maine R.*, 86), plaintiff's mortgage was not due when the property was attached by the defendant. The mortgage expressly authorized the mortgagor to retain possession of the property until default in payment, according to its tenor, but it contains a stipulation that, if the property should be attached by the creditors of the mortgagor, it should be lawful for the mortgagee to take immediate possession. It was decided, "that as the right to the immediate possession of the property was in the mortgagee, in the absence of any agreement to the contrary, that right was limited no farther than the intention of the parties, as manifested by the instrument required." "That the attachment and mortgagee's rights were simultaneous." The Court say: The law will not say that the attachment is legal, when it can give no right to the officer who makes it to hold possession, and could create no lien for the security of the debt of the creditor.

In the case of Ferguson *vs.* Thomas (26 *Maine R.*, 499), plaintiff claimed property by virtue of a chattel mortgage, payable in one year. The property was left in the possession of the mortgagor, and before condition broken, it was attached

by the defendant in favor of a third party.  The mortgage contained a clause giving full power and authority to the mortgagee, " to enter upon the premises, or elsewhcre, and take possession of the property and sell it, provided the mortgage should not be paid at maturity."  The Court did not doubt that the mortgagee might take possession of the property, unless the stipulation recited prohibited it.  They say, the deed to the plaintiff spoke the language of the mortgagor, and did not, in express terms, reserve the right to possession till the mortgage was due.  They regarded it as an enabling provision in furtherance of the security, intended for the benefit of the mortgagee, authorizing him to enforce payment sooner than otherwise could be done, under their statute, which gave sixty days after the forfeiture of condition. They did not regard the clause as reserving, in express terms, to the mortgagor the right to possess the property until the note was paid; it was only so, if at all, by implication. They thought it was neither, but only gave authority to take possession at a particular time, for the purpose of selling and paying the debt.  And see Melody *vs.* Chandler (3 *Fairfield R.*, 283), where it was declared that, unless the mortgage contained an *express stipulation to the contrary*, the right of possession follows the right of property.  In Spriggs *vs.* Camp & Camp (2 *Speers R.*, 181), the mortgagee brought suit before the mortgage was due.  The property was attached in the hands of the mortgagor, and sold by the Sheriff.  The mortgage contained a provision that, in the event it was not paid at maturity, the mortgagee should have the right to sell the property.  It was decided that the title to the property was in the mortgagee, and that, before condition broken, he could maintain trover against an attaching creditor for a wrongful conversion.  The Court say: The mortgagor had no more than a permissive license, resulting by implication from the covenant in the mortgage; it is unnecessary to say whether the mortgagee could have interfered with this possession

while it continued according to the terms of the agreement. But it becomes a different question when a stranger takes possession, and thereby puts the title of the true owner in jeopardy. In King *vs.* Bailey (8 *Missouri*, 332), a negro was mortgaged, and permission to retain possession of him was reserved. He was seized on execution, and suit being brought by the mortgagee, the Court decided that this permission was determinable at the will of the mortgagee, and it would not be the subject of a sale on execution. Permission that a chattel might remain with one, is not a permission that it may remain with another; and see Perkins *vs.* Mayfield (5 *Porter*, 182). In Mattison *vs.* Baucus (1 *Comst.*, 295), the mortgage contained a provision that the mortgagor should permit the mortgagee to possess, occupy and enjoy the property whenever he should demand the same. The mortgagor absconded, and the mortgagee took possession of the property prior to the levy by the Sheriff, who took it from him before the debt was due. It was decided it was not the subject of a levy; and see Howland *vs.* Willet, Sheriff, etc. (3 *Sandf. Sup. C. R.*, 607). In Wheeler *vs.* McFarland (10 *Wend. R.*, 318), it was agreed that the owners of a sawmill should have a lien for their charges in sawing logs into boards, that the boards should be removed a short distance from the premises, but the lien should continue until payment. The boards were sawed and were removed by the owners of them to a lot hired by them. The Court say: The boards were in the possession of the mill owners as against the judgment debtor, and the Sheriff could not levy upon them.

All those authorities, and many more cited in the case of Tannehill *vs.* Tuttle, maintain the doctrine that an officer cannot levy upon personal property which is mortgaged, whether in possession of the mortgagor or mortgagee, even if the mortgage is not due, unless the mortgage *contains an express stipulation permitting the mortgagor to retain posses-*

*sion for a definite period;* nor then, if that period has elapsed. The clause in the mortgage in this case is not an express stipulation. Neither is it an implied covenant, according to the decision in Fairfield *vs.* Thomas. For the purpose of any right which the plaintiffs seek to build upon it, it lacks the essential ingredient of certainty as to time, to make the property subject to levy and sale on execution. We regard the levy and sale by the constable as within the words "assign or dispose of, attempt to sell, assign or dispose of any part of said goods, or remove or attempt to remove," in the stipulation. It was clearly the object of the mortgagor to give the mortgagee security for his debt, and the mortgagee did not intend to deprive the mortgagor of the possession or use of his property, but the ordinary right of the mortgagee was not intended to be abridged by the interference of another creditor. He might be willing, as is said in King *vs.* Bailey, that the mortgagor might retain possession, but not that another should take it, and much less, convert it. But for the stipulation, no one would contend that there was any right in the mortgagor which could have been levied upon by the constable; any one interfering with the property, at least to the prejudice of defendants' rights, would have been liable to him in an action of trespass. Can they be less so, when the contingency has happened which the stipulation contemplates, when, if not before, the defendant was authorized to take possession of the property? The levy of the execution, or at least the attempt to dispose of it by a sale, and the right of the defendant were simultaneous. This clause in the mortgage was intended for the protection of the mortgagee, and whether the acts should be done by the plaintiff, or the mortgagor, or some one else acting for him, or authorized by him to interfere with his property, the effect was the same to the defendant, and consequently neither the mortgagor, nor any one in his behalf, could have any further rights under that stipulation. The legal title and the right to

the possession of the property was then, if not before, perfect in the mortgagee; he was, in the judgment of *law*, the absolute owner, and if he had not, and could not obtain the immediate possession of it, whoever retained it, whether mortgagor or constable, or any one else, was thenceforth a mere bailee at sufferance. (2 *Duer's Sup. Ct. R.*, 105, *Hull* vs. *Carnly; Marsh* vs. *Lawrence*, 4 *Cow. R.*, 469; *Otis* vs. *Wood*, 3 *Wend. R.*, 500; *McCracken* vs. *Luce* [*cited in Otis* vs. *Wood*]; *Bailey* vs. *Barton*, 8 *Wend.*, 346; *Mathison* vs. *Baucus*, 1 *Comst.*, 295; *Fuller* vs. *Acker*, 1 *Hill*, 473; *Rogers* vs. *Trader's Ins. Co.*, 6 *Paige*, 583; 4 *Comst.*, 509.)

The duty of the constable was plainly defined, and if he executed it, he, and all by whose direction he acts, are trespassers. (*Kink* vs. *Manning, Comyns R.*, 619; *Waddell* vs. *Cook*, 2 *Hill*, 47; *Melville* vs. *Brown*, 15 *Mass. R.*, 82; *Burrall* vs. *Acker*, 23 *Wend.*, 609.)

It appears from the record, that the mortgage was duly recorded in the office of the Town Clerk a considerable time before the levy of execution by the constable. The constable had constructive notice of the mortgage at the time he levied. The levy of an execution upon growing grain is usually considered a desperate remedy, and in such cases the officer should examine the record or files of the Town Clerk, for incumbrances which he perhaps might well apprehend to exist, and if it should be found that the personal property of the debtor was subject to a mortgage, giving the debtor a right of possession of the goods mortgaged for a specified or *definite period*, he should levy on the right, title and interest of the debtor or mortgagee, and advertise and sell it.

In this case there is no pretence that the constable levied on the right of the mortgagor subject to the mortgage, nor that he advertised the right; he must have advertised a sale of the *property*, for he offered the property at public sale when the defendant arrived and claimed it, upon and by virtue of his mortgage. It is claimed, that when thus notified

of the mortgage by the defendant, and after he heard it read, he then changed his offer of the property, to an offer to sell the mortgagor's right in the property. His return on the execution is, that, "by virtue of his execution, he levied on nine acres of wheat, and all of the debtor's right to the wheat was sold and bid off by a stranger." Without deciding whether he could sell otherwise than according to his levy and advertisement, we are of the opinion that the refusal of the Circuit Judge to receive the proof offered, to explain the return, and show the circumstances attending the sale, that the offer of the debtor's *interest* was made immediately after the reading of the mortgage, is of no importance. It was decided in Hull *vs.* Carnly, 2 Duer Sup. C. R., 106, in reference to a similar sale of a mortgagor's interest, that, "whenever it is known to the Sheriff, or he has reason to believe, that the interest of the judgment debtor in the property upon which he has levied is special and limited, it is his duty to declare the fact, and, by express words, confine the sale to such right, title and interest as the debtor may really possess; and this doctrine applies with peculiar force to the relation of mortgagor and mortgagee." If the evidence which the plaintiffs offered had been received, it would not change the position of the plaintiffs, or any one of them, from what they now appear. The officer, even in that case, would not appear to have sold the property subject to the mortgage, but rather in defiance of it, and, as if not recognizing its validity, he makes no allusion to it; the officer and all the plaintiffs were manifestly acting upon the belief, that, as the property was in the barn of the defendant, they had the right to sell, at least the right of redemption of the judgment debtor; and, in selling, the possession of the property, so far as it was capable of being done, was delivered by the officer to the purchaser, who took it away, and had the wheat made into flour; when, as we have seen, there was no interest in the property in the mortgagor which was liable to sale, or which authorized the

officer to meddle with it. He appears to have acted in entire disregard to the claim set up by the mortgagee, to the possession of the property. Instead of yielding to the claim, and relinquishing the levy, be continued to exercise control over it, and sold it. If the right of redemption in the property in the actual possession of the mortgagor (but not for a definite period), could have been sold, the property was worth far less than the sum due on the mortgage, and it is difficult to perceive what use could have been made of the wheat, consistent with the rights of the mortgagee. We are of the opinion that the acts of all the plaintiffs were unauthorized, and that they are liable to this action.

It is said that the plaintiff in the execution, and the constable, left the property in the barn, and plaintiff could have taken it or replevied it; but this was occasioned by the necessity of the case. In all cases where goods are wrongfully sold, the owner has an election to replevy the property from the hands of the purchaser, or recover its value from the tortious vendor purchasers, etc. (2 *Duer's Sup. C. R.*, 108; 10 *Wend. R.*, 318.)

Judgment affirmed.

Present, WING, GREEN, BACON, PRATT, COPELAND, MARTIN, DOUGLASS, J. J.

JOHNSON, J., having decided the cause below, did not participate.