MERCHANTS' NATIONAL BANK, Respondent, v. J. L. ABERNATHY *et al.*, Appellants.

### Kansas City Court of Appeals, June 13, 1888. *

1. **Negotiable Instruments:** ASSIGNEE OF NEGOTIABLE NOTES: EFFECT OF ASSIGNMENT AS TO MORTGAGE. The assignee or indorsee of a negotiable note, under-due (secured by mortgage), takes the mortgage precisely as he takes the note, and as fully freed from all defenses. (Daniel Neg. Inst. sec. 834; *Hagerman v. Sutton*, 91 Mo. 519).

2. ———: CONTRACT: MEANING OF THE PHRASE " LEGAL REPRESENTATIVES ": CASE ADJUDGED. Primarily the phrase " legal representatives " refers to one's executors or administrators. It is not necessarily so, except when applied in connection with the decease of some one, and even in that case, the context of the instrument may change the usual meaning of the words in the given case. *Held* that in this case, these words will include those who may represent the mortgagee by assignment, as well as those who will represent him after his decease.

3. ———: WHEN NOTES HELD AS COLLATERAL SECURITY: CASE ADJUDGED. Though the notes, in this case, were only indorsed as collateral security, yet the indorsee holds them as for value, and is entitled to be protected as though an absolute *bona-fide* purchaser.

4. **Practice:** OBJECTIONS TO TESTIMONY: WHEN NOT AVAILABLE. When objections to testimony are not specific, but general, they will not be noticed by this court.

*On rehearing.*

5. **Trespass:** LEVY OF EXECUTION ON PROPERTY NOT BELONGING TO DEFENDANT: WHEN DEMAND NOT NECESSARY. When an officer levies on property not belonging to the defendant, no demand need be made for its return. His act makes him a trespasser, and he is entitled to no indulgence. The owner whose property has been taken under a writ to which he was not a party may sue in trespass, or in trover, or he may recover the property taken.

* NOTE:—This case was not delivered to me by the clerk, until Dec. 24, 1888.—*Reporter.*

6.  **Execution**: INTEREST OF MORTGAGEOR OF PERSONAL PROPERTY:
WHEN SUBJECT TO LEVY UNDER ATTACHMENT OR EXECUTION : CASE
ADJUDGED.  In this state, the interest of a mortgageor of personal
property is subject to levy under attachment or execution only
when he has a definite and determined right of possession.  The
right of possession must be for a definite period,—possession during
the pleasure of the mortgagee will not suffice.  *Held* that the pos-
session, in this case, was not such as is required by the rule in force
in this state to make the mortgageor's interest subject to levy.

*Appeal from Jackson Circuit Court.*—HON.  TURNER
A. GILL, Judge.

AFFIRMED.

The case is stated in the opinion.

*Scarritt & Scarritt,* for the appellants.

(1) Instructions one and two given by the court are
erroneous in that they fail to give to the jury the proper
manner of determining the measure of damages.  And
further, instruction one tells the jury peremptorily to
find for the plaintiff, without giving them the oppor-
tunity to pass upon the issues of fact presented by the
evidence in the case.   (2) In instruction number two,
given for plaintiff, the court requires the jury to find
the value of the property "at such sum as they may
believe from the evidence such property could have been
sold for at the time, and in the place and condition it
was in when it was first levied on by the constable,
assuming that it could then and there have been sold for
its fair and true cash value."  Under the terms of the
mortgage the plaintiff, in order to foreclose any rights
they might have had in the property, were compelled to
have possession taken of it and sell it at public sale.
They had no right to the value of it at the time and in
the place and condition in which it was at the moment
of the levy. The value of plaintiff's rights in the mort-
gaged property was when it was sold at public sale, as
the mortgage directed.   (3) The evidence tends to show
that it was agreed and understood between Grauman

and Howell that the stock of liquors mentioned in the mortgage was to be sold and replenished, in the usual course of trade, by Howell, for his own use and benefit. If such was the agreement, the mortgage on such stock of liquors was void, and plaintiff had no right to it; and the question as to whether such an agreement or understanding was had between Grauman and Howell, should have been left to the jury. *State ex rel. v. Jacobs,* 2 Mo. App. 183 ; *Stanley v. Bunce,* 27 Mo. 369 ; *Billingsley v. Bunce,* 28 Mo. 547 ; *Earl v. Hart,* 14 Mo. App. 594 ; *Weber v. Armstrong,* 70 Mo. 217. (4) The taking of the property was not tortious, and the defendants were entitled to a demand for its return before any action could be maintained against them. The court, therefore, erred in refusing defendants' instructions numbered seventeen and eighteen. *Thompson v. Rose,* 16 Conn. 71 ; *Rembaugh v. Phipps,* 75 Mo. 422 ; *Koch v. Branch,* 44 Mo. 546 ; *Buffington v. Clarke,* 8 Atl. Rep. 247. (5) If the mortgage was void for fraud as against these defendants, then they had the right to levy their attachment ; and if they released the same as soon as they found plaintiff had the notes, then the court erred in refusing instructions numbered two, sixteen and seventeen. One of these instructions should have been given. *Neimetz v. Mec. Ass'n,* 5 Mo. App. 59 ; *Kramer v. Faulkner,* 9 Mo. App. 34 ; *Koch v. Branch,* 44 Mo. 546. (6) In order to maintain this action the plaintiff must show that at the time of the alleged conversion it was the legal owner of or entitled to the immediate possession of the property in dispute. Under the terms of the mortgage the only person so entitled to take possession is "Grauman or his legal representative." Plaintiff, by reason of being holder of the mortgage notes as collateral security for a debt of Grauman's, is neither "David Grauman or his legal representative." *McCray v. McCray,* 12 Abb. Prac. [N. Y.] 1 ; *Hogan v. Kean,* 3 Dill. [C. C. R.] 125 ; *Atkinson v. Duffy,* 16 Minn. 49 ; *People v. Pluless,* 78 Ill. 148 ; *Wooneke v. Lemben,* 71 Ill. 91 ; *Stockdale v. Nicholson,* L. R. Eq. Cas. 365 ;

*Cox v. Curwen*, 118 Mass. 200; *Anderson v. Austin*, 34
Barb. [N. Y.] 321; *Alger v. Parrett*, 3 L. R. Eq. Cas.
328; *In re Wyndhams*, 1 L. R. Eq. Cas. 293; *Chicago
v. Mayor*, 18 Ill. 356; *Bruteller v. Milwaukee*, 8 Minn.
103; *Dolbear v. Norduft*, 84 Mo. 619; *Buckingham v.
Andrews*, 34 Barb. 434; *Lewis v. Mobley*, 34 Am.
Dec. 379; *Parker v. Rodes*, 79 Mo. 91; *Myers v. Hale*,
17 Mo. App. 209. (7) By the terms of the mortgage,
Grauman was the person selected to take possession and
sell the property, in case of a breach of the conditions
of the mortgage by the mortgageor. This power vested in
him was a personal trust, and unless the deed authorizes
him to delegate this power, he cannot do so. *Graham
v. King*, 50 Mo. 22; *Howard v. Thornton*, 50 Mo. 291.
(8) The placing of the notes secured by the chattel mort-
gage with the bank, as collateral security for Grauman's
debt, did not give the bank any legal interest in, or any
legal right to the possession of the mortgaged property.
The mortgagee held the legal title to the property and
became a trustee for Howell and the bank. *Potter v.
McDowell*, 43 Mo. 98. (9) Where a note is secured by
mortgage, and there is a provision in the mortgage not
contained in the note, the mortgage will control. *Dob-
bins v. Parker*, 46 Iowa, 358; *Muzzy v. Knight*, 8 Kan.
456; *Meyer v. Grauber*, 19 Kan. 165. (10) After the
maturity of a debt secured by mortgage or deed of
trust of personal property, the mortgagee or trustee has
the legal title and the right to recover possession. *Lacey
v. Wathen*, 36 Mo. 320; *Dean v. Davis*, 12 Mo. 117;
*Bowens v. Benson*, 57 Mo. 26. And the mortgagee is
the proper party to maintain an action for damages for
the conversion of the property. *Pace v. Pierce*, 49 Mo.
394. (11) The duty of an endorsee of a note and mort-
gage is to enquire of the mortgagee if there be any
reason why the note and mortgage should not be paid.
Colebrooke on Collateral Securities, p. 187, sec. 147;
*Wilkinson v. Simpson*, 2 Moore Pr. Co. 275. (12) The
giving of the notes to the bank as collateral security did
not transfer the title to the property mortgaged to the
bank. The rules of law governing collateral securities

governed the notes ; and while the bank had the right in equity to preserve the security, yet it did not have any legal title or right of possession in the mortgaged property. (13) As between the parties, no record of any assignment of the mortgage security, given for the payment of promissory notes, is necessary ; but as against third parties, even where not required by direct statutory provisions, such assignment should be placed on record, thus charging all parties dealing with the property with notice of the rights of the endorsee and assignee. Colebrooke on Collateral Securities, p. 188, secs. 147, 148 ; *Ogle v. Turpin,* 102 Ill. 148 ; *James v. Johnson,* 6 Johns. Ch. 417 ; *Johnson v. Carpenter,* 7 Minn. 183 ; *Gregory v. Savage,* 32 Conn. 250 ; *Welsh v. Priest,* 8 Allen, 165 ; *Young v. Miller,* 6 Gray, 152 ; *Henderson v. Pilgrim,* 22 Tex. 464.

*Gage, Ladd & Small,* for the respondent.

(1) The levy of the attachment and carrying off of the property was a breach of all of the safety clauses in the mortgage, for it was an "attempt to sell or dispose of said property," "a removal of or attempt to remove the same from the saloon or restaurant above described," and "an unreasonable depreciation of the value thereof," upon the violation of either of which clauses, Grauman, if he had still remained the holder of the notes, would have been entitled to take possession of and sell the property. *Ashley v. Wright,* 19 Ohio St. 291 ; *Eggleston v. Munday,* 4 Mich. 298 ; *Welch v. Whittemore,* 25 Me. 86 ; Herman on Chat. Mort., sec. 291. (2) But Grauman having assigned and endorsed the notes and delivered the mortgage to the respondent, who received them before maturity, as security for a loan made to Grauman at the time, the respondent was the legal holder of the notes and mortgage, at the time the condition was broken, and was therefore the proper party to take possession, and exercise the power of sale, etc. *Logan v. Smith,* 62 Mo. 455 ; *Pickett v. Jones,* 63 Mo. 199 ; Jones on Chat. Mort., sec. 502 ; *Langdon v. Buel,*

9 Wend. 80.   The elaborate discussion of the meaning
of the words "legal representative," indulged in by
appellants' counsel, is interesting, but unnecessary;
because the law makes the mortgage and all the rights
and powers it confers on the mortgagee, assignable,
without any express provision in the mortgage to that
effect.   If the word "assigns" is left out of a mortgage
by the printer who gets up the blank, it is interlined by
the court.   But it may be noted that in the mortgage in
this case the conveyance was expressly to said Grauman,
his executors, administrators "and assigns," and that
the surplus after sale was payable to said "A. J. Howell
or his legal representative."   Evidently Howell's assigns,
as well as his administrator, are included as among his
"legal representatives," and if so, why not Grauman's
among his ?   *Warnecke v. Lembca*, 71 Ill. 91 ; *Hogan v.
Page*, 2 Wall. 605 ; *Bowman v. Long*, 89 Ill. 19 ;
*Kreber v. Att'y Gen.*, 6 Serg. & R. [Pa.] 81 ; *Phelps v.
Smith*, 15 Ill. 572 ; *Delannay v. Burnett*, 4 Gilm. [Ill.]
454 ; *Railroad v. Brayon*, 8 S. & M. [Miss.] 234.   (3) Even
if the transaction between Grauman and Howell were
designed by both of them as a fraud upon Grauman's
creditors, that could not prejudice the respondent's
rights, because it was an innocent party.   A mortgage
which secures negotiable notes, "being the incident,
partakes of the negotiability of the notes, and passes
with a transfer of the notes without any formal assign-
ment or delivery, or even mention of it," and an inno-
cent purchaser and holder of the notes takes the same
title to the mortgage that he does to the notes—free
from all equities between the parties or the claims of
their creditors, or subsequent purchasers, and no record
in the recorder's office of the assignment of the notes or
mortgage is either authorized or required.   *Hagerman
v. Sutton*, 91 Mo. 519 ; 8 West. Rep. 312 ; *Johnson v.
Johnson*, 81 Mo. 331 ; *Logan v. Smith*, 62 Mo. 455 ;
*Lee v. Clark*, 89 Mo. 553.   (4) But there is no evidence
of Howell's notice or participation in Grauman's fraud.
The evidence shows that he was the chief sufferer and

victim of Grauman's fraud and. not a party to it. The court was authorized and justified in withdrawing that question from the jury, even if it had been material in the case, which it was not. *Haussman v. Hope*, 20 Mo. App. 197; *Jackson v. Hardin*, 83 Mo. 175. It is not claimed that plaintiff had any notice or knowledge of fraud as between these parties, nor that it participated in it. (5) The release of the attachment which the appellants ordered the constable to make on January 24, is no defense. The property was seized January 13, eleven days before, and in the meantime had been taken out of the building, where it was located, and distributed around the city with various auction dealers. It was, therefore, necessarily much depreciated in value. It is impossible to close up a business like that, take out the fixtures, utensils, furniture, etc., and hawk them around the city for over a week, without greatly depreciating their value. And besides, there is no evidence that respondent ever knew of this release, and there was no offer to return the property, or any part thereof, until six weeks still later. After the property was seized by appellants, respondent was not obliged to receive it back, even had it not been injured, but could refuse to do so and recover its value. A trespasser and wrongdoer makes his own bed, and must lie on it. *Hammers v. Wilsey*, 17 Wend. 91; *Olis v. Jones*, 21 Wend, 394; *Tiffany v. Lord*, 65 N. Y. 310; Drake on Attach. sec. 185c. (6) The value of the property at the time of conversion was the proper measure of damages. *Peckinbaugh v. Quillin*, 12 Neb. 586; *Eggleston v. Munday*, 4 Mich. 295; *Worthington v. Hanna*, 23 Mich. 530. But the court's instruction told the jury to allow the respondent the value of the property, at the time and place and condition it was in at the time of the levy, not exceeding the bank's notes against Grauman. There was evidence that the property was worth considerably more than the bank's claim against Grauman. The court would have been fully justified in allowing the respondent to recover the full value of the property taken. There is nothing in this instruction of which

appellants can complain. (7) No demand of tne property from the appellants or the constable was necessary, because the levy was wrongful. *Leonard v. Hair*, 133 Mass. 455. (8) Defendants, having seized this property wrongfully, it is immaterial, even if the contrary were not true, that they were ignorant of the wrongful character of their act. (9) Defendants, objections to testimony admitted cannot be considered here, because no reason whatever appears to have been assigned for any of them, and besides all the witnesses were saloon and restaurant men, and familiar with the property in question, and their testimony as to its value was perfectly competent. Irwin sold part of the property to Grauman on December 12, 1882, it was seized by appellants January 13, 1883, only one month afterwards. Irwin testified that the property he sold Grauman was delivered at the restaurant. Gregory also so testified. It was therefore for the jury to say how much, if any, it had changed in value between the time it was bought and the time it was levied upon. There is no error in the record, and the judgment below should be affirmed.

*Scarritt & Scarritt*, on rehearing.

(1) Where an officer holding proper legal process takes goods from the defendant named in the writ, his possession is lawful so that replevin or trover cannot be maintained against him without demand. *Daumiel v. Gorham*, 6 Cal. 43; *Kelley v. Scannell*, 12 Cal. 73; *Ingalls v. Buckley*, 13 Ill. 316; *Page v. Crowsby*, 24 Pick. [Mass.] 216; Add. on Torts [Wood's Ed.] pars. 471–475. (2) "A party attaching goods under civil process is entitled to notice of a claim of a third party to the goods, and a demand for them, or he is not liable in damages to such party for such seizure and detention. A conversation between the claimant of the goods and the officer's deputy, in which the former asserted that the goods were his, cannot be held as notice or demand to the attaching party." *Taylor v. Seymour*, 6 Cal.

512. See also the following cases: *Stanchfield v. Palmer*, 4 Greene [Iowa] 23; *Gilchrist v. Moore*, 7 Iowa, 9; *Boughton v. Bruce*, 20 Wend. 234; *Windsor v. Boyce*, 1 Houst. [Del.] 605; *Wood v. Cohen*, 6 Ind. 455; *Stratton v. Allen*, 7 Minn. 504. In such a case it is not necessary that the defendant specially plead want of notice and demand, in order to make such defense. *Kelley v. Scannell, supra; Singer Co. v. King*, 14 R. I., 511; 24 Am. Law Reg. [N. S.] 51 and note; *Thompson v. Rose*, 16 Conn. 71; *Rembaugh v. Phipps*, 75 Mo. 422; *Koch v. Branch*, 44 Mo. 546; *Buffington v. Clark*, 8 Atl. Rep. 247. If the goods are tendered to plaintiff before suit, and refused by him, or if plaintiff demands more than he is entitled to, then there is no conversion. Addison on Torts [Wood's Ed.] p. 500, par. 472. If defendant retains goods although demanded, for the purpose of investigating plaintiff's title thereto, and after a reasonable time offers to return them, there is no conversion. Addison on Torts [Wood's Ed.] pp. 500, 503, pars. 472, 473, 474, 475. (3) Grauman, had he remained the owner of the notes, could not have maintained this action without a demand, and even if he could his assignee could not. *Root v. Bonnema*, 22 Wis. 539; *Wash v. Sichler*, 20 Mo. App. 378. (4) By the terms of the chattel mortgage, which is the ground of this suit, the plaintiff is not entitled to maintain this action. (5) The most liberal rule of construction, as to effectuating the intention of the parties to the contract, is announced by uniform authority to be this: "In ascertaining the intention of the parties, where there are doubtful words in a contract, the whole face of the instrument should be regarded, and the acts of the parties and the circumstances surrounding them, at the time of the execution of the contract, should be considered, but the primary meaning of words should not be changed unless it is manifest from such evidence that the parties intended that they should have a different meaning." *Collins v. Lavelle*, 44 Vt. 233; *Jackson v. Meyers*, 3 Johns. 383; *Miller v. Holt*, 68 Mo. 587; Bishop on Cont., secs. 381, 384.

*Gage, Ladd & Small*, on rehearing.

(1) That the formula "his legal representatives" embraces representatives by contract, such as assignees or grantees, is shown to a demonstration in the opinion already rendered in this case, still we may be pardoned for the following quotation from the case of *Hammond v. Coleman*, 4 Mo. App. 321: "In the language of the supreme court of the United States: This formula, 'or his legal representatives,' embraces representatives of the original grantee in the land by contract, such as assignees or grantees, as well as by operation of law, and leaves the question open to inquiry in a court of justice as to the party to whom the certificate of patent or confirmation shall enure. *Hoagland v. Page*, 2 Wall. 607." In *Loss v. Ins. Co.*, 41 Mo. 441, it is said: "Legal representatives and personal representatives, in the general or professional sense, mean simply executors or administrators. Although this is the primary, legal meaning, they are often construed differently, if it is clear that the intention was to vest the estate in a different class of persons. * * * The intention must control, and that intention is to be gathered by a view of the context, subject-matter, and the purpose to be attained." To the same effect see: *Wanecke v. Lembca*, 71 Ill. 19; *Bowen v. Long*, 89 Ill. 19; *Kreber v. Att'y Gen.*, 6 Serg. & R. [Pa.] 81; *Phelps v. Smith*, 15 Ill. 572; *Railroad v. Brayon*, 8 S. & M. [Miss.] 234. Here the "purpose to be attained" and "the subject-matter" was the security of a negotiable note, a note which passes like money, from hand to hand, by a mortgage on personal property. The mortgage was intended to secure the holder of this note whoever he might be. It is necessary to the accomplishment of this purpose that the holder of the note should be enabled to enforce the security on default in payment or other condition broken. (2) The act of appellants in making levy and carrying off property was wrongful and no demand was necessary. The officer who made levy was not only a

constable, but he was appellants' clerk. His act was their act, without further notice to them.

ELLISON, J:—The respondent sued the appellants in the court below to recover damages for wrongfully seizing, on January 13, 1883, under a writ of attachment issued by a justice of the peace, in a suit in which appellants were plaintiffs and one David Grauman was defendant, certain personal property consisting of saloon and restaurant fixtures and utensils, etc. This property, the respondent claims, it was entitled to possession of, as the holder of certain negotiable notes secured by chattel mortgage on said property, made by one A. J. Howell in favor of said Grauman, dated January 5, 1883, and duly endorsed before maturity by said Grauman, and delivered to the respondent as collateral security for a loan of eight hundred dollars made by respondent to Grauman. In their amended answer the appellants admitted the seizure on the day alleged by respondent, but denied that it was wrongful, and further alleged that on January 5, 1883, said Grauman was indebted to appellants and others, and in order to defraud his creditors, transferred the property in controversy to said Howell and took back the notes and mortgage of Howell mentioned in the petition, to secure the "pretended purchase money;" that said sale and mortgage were made to cover up said property and to hinder, delay and defraud the creditors of said Grauman; that prior to said seizure appellants had no notice that the bank held the notes mentioned in the mortgage, and also that afterwards, on January 24, 1883, appellants instructed the constable to release their attachment, which was done. It is not pretended that the plaintiff had any notice of Grauman's fraudulent purposes or in any way participated therein. The mortgage securing these notes was conditioned "that if I pay to the said David Grauman, his executors, administrators and assigns, my two notes each dated Kansas City, Mo., January 5, 1883, each payable for value received to the

order of David Grauman," etc., etc., "then this convey-
ance shall be void, otherwise to remain in full force and
effect." It was stipulated in the mortgage that the
mortgagor should retain possession of the property, but
that in case of sale, disposal, removal or depreciation of
the same, "the said David Grauman or his legal repre-
sentative may take said property or any part thereof
into his possession," and that, upon taking possession,
"the said David Grauman or his legal representative
may proceed to sell the same," etc. Plaintiffs recovered
below and defendant appealed.

I. It is contended that the mortgage and notes,
known to the mortgagee, were a sham and executed for
the purpose of defrauding the mortgageor's creditors ;
and that though the notes in the hands of the plaintiff
might, on account of their negotiability, be free from
this vice, yet the mortgage pertaining only to the prop-
erty might be defeated notwithstanding the assignment
of the notes to plaintiff who had no knowledge of the
fraud. I do not agree to this view. I think it is not
supported by the cases of *Linville v. Savage*, 58 Mo.
248 ; *Logan v. Smith*, 62 Mo. 455, and *Orrick v. Dur-
ham*, 79 Mo. 174. The first-named case is not easily
understood ; it was reviewed and explained in *Logan v.
Smith*. Neither of the cases presents the question now
before us, and the language used in those decisions must
be construed with reference to the subject under discus-
sion. In the recent case of *Hagerman v. Sutton*, 91
Mo. 519, our supreme court have disposed of the
question by holding that the assignee or indorsee of a
negotiable note, under-due, takes the mortgage precisely
as he takes the notes, and as fully freed from all
defenses. This is the view of the great weight of
authority and has the endorsement of Daniell on Nego-
tiable Instruments, sections 834, 834a, and of Jones on
Mortgages, section 834. The matter is well stated in 16
Wall. 271, as follows : "The contract as regards the
note was, that the maker should pay it at maturity to
any *bona-fide* endorsee without reference to any defenses
to which it might have been liable in the hands of the

payee. The mortgage was conditioned to secure the fulfilment of that contract.''

II. It is next insisted· that as the mortgage provides that in case of removal, depreciation, etc., of the property, the said Grauman, " *or his legal representative*," may take said property and that said Grauman or "his *legal representative*" may proceed to sell the same, that plaintiff was not entitled to the possession of the property and consequently ought not to maintain this suit ; that no one was entitled to the possession but Grauman or his executor or administrator ; that the words, legal representative, necessarily mean an executor or administrator, and in no event can have reference to the assignees or indorsees of Grauman. Counsel, with commendable research, have collated a number of authorities on this branch of the case. There can be no doubt that primarily, the phrase, legal representatives, refers to one's executors or administrators. This is well-nigh universally so, when applied in·connection with the decease of some one. It is not necessarily so when not so applied. The authorities cited are nearly, if not all, cases of this nature. Such as where one in a will, in referring to matters to occur after his death, speaks of his legal representatives. So where statutes authorize suits for the death of one to be brought by his legal representatives. But it is held that even in cases where the death of the party to be represented is in contemplation, that the context of the instrument may change the usual meaning of the words in the given case. This mortgage should be construed as a whole and in the light of its legal attributes. The express condition of the mortgage is, that the notes must be paid to Grauman, his executors, administrators, or assigns. Then proceeding to provide a safety clause, it is stated that Grauman or his legal representative may take the property. Legal representative, as here used, unquestionably would include those who may represent him by assignment as well as those who would represent him after his decease. The law as we have seen, gives to the mortgage, as being incident to the notes, the quality of

negotiability, and as such the parties would be held to contemplate their assignment and a full succession by the assignee to the rights of the assignor. Besides, the safety clause in a chattel mortgage is for the benefit of the mortgagee and his assigns, and acts under such clause are within the discretion of the mortgagee to be exercised at his will, if done in good faith. Jones on Chat. Mort., secs. 431, 433. The exercise of the powers given under the safety clause are in their nature personal to the mortgagee or holder of the notes secured.

III. Though the notes in this case were only endorsed as collateral security, yet the endorsee holds them as for value and is entitled to be protected as though an absolute *bona-fide* purchaser.

IV. The objections to testimony were too general to be noticed.

The judgment, with the concurrence of the other judges, is affirmed.

## On rehearing.

HALL, J.—We adhere to the original opinion in this case. To illustrate what is therein said under the second point we set out the following provisions of the chattel mortgage : " The property hereby sold and conveyed, to remain in my possession until default be made in the payment of the said debt, and interest, or some part thereof; but in case of a sale or disposal or attempt to sell or dispose of said property, or a removal of, or attempt to remove the same from the saloon and restaurant above described or any unreasonable depreciation in value thereof, the said David Grauman or his legal representative may take the said property or any part thereof into his possession. Upon taking possession of said property, or any part thereof, either in case of default or as above provided, the said David Grauman or his legal representative may proceed to sell the same or any part thereof, at public auction, to the highest bidder, for cash, at the saloon and restaurant above

described or at the public square, City of Kansas, county of Jackson and state of Missouri, having first given ten days public notice of the time, terms and place of sale, and the property to be sold by advertisement posted in at least five public places in said Kansas City. And after satisfying the necessary costs, charges and expenses incurred by him and paying said debt and interest out of the proceeds of such sale, he shall pay over the surplus, if any, to A. J. Howell, or his legal representative."

In support of our conclusion, that his "legal representative," as used in connection with the mortgagee, included his assignee, we simply desire to call attention to the fact, that by the use of the same words in connection with the mortgageor, in the conclusion of the mortgage, was clearly intended the mortgageor's assignee as well as his executor or administrator.

In the original opinion nothing was said as to the point made by counsel for appellant, that the plaintiff had made no demand for the property in dispute, and that a demand was necessary to enable the plaintiff to maintain this suit. Nor was anything said as to the further point made by the same counsel, that the plaintiff, by refusing to receive the property tendered to it before suit, by the constable, lost the right to sue for the conversion of the property thus tendered. These positions taken by counsel depend upon whether the levy by the constable upon the property was tortious. Because if the levy was wrongful, no demand was necessary—as must be admitted—and neither could the trespasser deprive the plaintiff of the right to proceed against him for the value of the property instead of receiving it back. *Regor's Adm'r v. Owings*, 35 Mo. 509. The writ of attachment afforded no protection to the constable if he levied upon property not that of the defendant in the writ, but that of the plaintiff, a stranger to the writ. If such was the case no demand was necessary. "When an officer levies on property

not belonging to the defendant no demand need be made for its return. His act makes him a trespasser, and, being such, he is entitled to no indulgence." Freeman on Ex. sec. 254. "The owner, whose property has been taken under a writ to which he was not a party, has his choice of remedies by which to seek redress. He may sue in trespass or in trover, or he may recover the property taken." *Id.* See also *State to use v. Moore,* 19 Mo. 369; *Bradley v. Holloway,* 28 Mo. 151.

The real question suggested by the points raised by counsel is, therefore, did the defendant in the attachment have an interest in the mortgaged property subject to levy and seizure under the writ of attachment? He was technically the mortgagee as to said property; but since the sale by him to Howell, who gave the mortgage back to him, was fraudulent and void as to the attaching creditors, and since the mortgage had been assigned by him to the plaintiff, a purchaser in good faith, and was therefore valid and binding in favor of the plaintiff, the real attitude borne by the defendant in the attachment suit to the property was, as to the plaintiff and the attaching creditors, that of owner subject to the mortgage. In other words, the defendant in the attachment suit, as to the plaintiff and the attaching creditors, had the rights of the mortgageor in the property, and none other. Was such interest in the property subject to levy? In this state the interest of a mortgageor of personal property is subject to levy under attachment or execution only when he has a definite and determined right of possession. Jones on Chat. Mort. 587; *King v. Bailey,* 8 Mo. 332; *Yeldell v. Stemmons,* 15 Mo. 443; *Boyce v. Smith,* 16 Mo. 317; *Foster v. Patton,* 37 Mo. 529; *Dean v. Davis,* 12 Mo. 113. The right of possession must be for a definite period, possession during the pleasure of the mortgagee will not suffice. *King v. Bailey, supra.* "The bare possession of a chattel by a mortgageor with the consent or permission of the mortgagee, and determinable at his will, would not be the subject of sale, under an execution. Permission that a chattel may remain with one is

not permission that it may with another. If one merely permits his slave to remain during pleasure with his neighbor, has the neighbor such an interest in the slave as can be sold under execution? Would the consent of the master that his slave might remain with a particular person be construed to mean that any one might have the possession of him who purchased under an execution?" *Id.*

The defendant in the attachment had such possession of the property as was given by the provisions of the mortgage above quoted. That possession was not such as is required by the rule in force in this state to make the mortgageor's interest subject to levy. Jones on Chat. Mort. sec. 556; *Ashley v. Wright*, 19 Ohio St. 291; *Eggleston v. Munday*, 4 Mich. 298; *Welch v. Whittemore*, 25 Mo. 86. The mortgage gave no definite and determined right of possession, and besides the right of possession, was according to the provisions of the mortgage, destroyed by the levy itself.

The case is, therefore, this: The officer under a writ of attachment against the mortgageor seized the plaintiff's property in which the former had no leviable interest. The plaintiff had neither to make a demand for the property nor to accept it when tendered back.

Judgment affirmed. ELLISON, J., concurs; PHILIPS, P. J., concurs in the result.