PERKINS and ELLIOTT VS MAYFIELD.

*As to what consideration will support a trust deed.*
*As to a sale of the equity of redemption ander execution.*
*As to deeds of indemnity to a surety.*
*Points of practice, as to issue, and errors.*

1. A claimant of property levied on undei execution, cannot, it seems under decisions of this Court, now avail himself of a defect in the judgment or decree, upon which it has issued.

2. That one becomes the surety of another, to his bond as executor, is a sufficient consideration to support a deed of trust.

3. A mere equity of redemplion in personal property, unaccompanied by possession in the mortgagor, cannot be reached by execution, and made the subject of levy and sale.

4. Where a deed of a slave was executed by one, as an indemnity to others, who became his sureties to a bond as executor,—and by the terms of the deed, the sureties were authorised to sell the slave upon becoming liable as the sureties of the executor, at such time and place as they might chose,—it was held, that the slave could not be sold under an execution issued upon a decree obtained against the executor, as such—it appearing that outstanding claims still existed, upon which the sureties might be liable.

5. It seems that an issue between a plaintiff in execution, and a claimant of property, levied on under it, should conform to the amount of the interest sought to be contested: as, if an equity of redemption be in controversy, the issue should seek to condemn that alone, and not the entire estate.

PERKINS and ELLIOTT vs MAYFIELD.

6. A defendant in error, will not be permitted to refer this Court to errors of an inferior Court against himself, as a reason why errors committed against a plaintiff here, should not be considered.

On writ of error to the Circuit Court of Tuskaloosa.

This cause came before this Court by writ of error, to revise a judgment of the Circuit Court of Tuskaloosa county. A bill of exceptions was sealed in the progress of the trial, from which the following facts appeared, viz: That John Spencer, sen'r, late of that county, made his will, and died previous to the year eighteen hundred and thirty-one: That one Edward B. Elliott was appointed by him, executor, who qualified as such; and that the Judge of the County Court, from whom he received letters testamentary, made a decree, on the fourteenth day of January, eighteen hundred and thirty-one, in which he directed, the sum of four thousand eight hundred and fifty-five dollars and ninety cents, to be paid to the different legatees under the will, as they were respectively entitled. And among others, the sum of seven hundred and eleven dollars, ninety-seven cents, was decreed to be paid to Louisa Spencer. To collect which last mentioned sum, a writ of *fieri facias* was issued on the fifth day of January, eighteen hundred and thirty-five, in the name of Isaac N. Mayfield and his wife, Louisa, late Louisa Spencer, (with whom it was stated he had intermarried.)

This execution was levied by the sheriff of Tuskaloosa county, on a negro man slave, named James, to whom the plaintiffs in error, interposed a

claim, with the view to try the right under the statute.

On the trial, the defendant in error, gave in evidence, a deed from Edward B. Elliott, from which it appeared, that the plaintiffs were Elliott's sureties, in the bond executed by him, as executor of the last will and testament of John Spencer, senior: and that with the view of securing them against the consequences of their suretyship, and to save them harmless from all liability, the executor had thereby conveyed to them the slave in question, with other personal property: vesting in them full power and authority, to sell all or any portion of the property, as should be necessary to discharge any liability fixed upon them as such surities, or money paid by them on that account, at public auction, on giving ten days notice of the time and place of sale.

It further appeared that the plaintiff, Perkins, was in the possession of the slave James, at the time of the levy, and had been for some time previously; and that he asserted his right to hold, under the deed, which bore date twenty-ninth day of January, eighteen hundred and thirty-one.

During the progress of the investigation in the inferior Court, the presiding Judge was requested to charge the jury—"that if they believed the property in controversy, had been conveyed to Perkins and Enoch Elliott, the claimants, in trust for their indemnity, as security for Edward B. Elliott; and that it had gone into the possession of one of the claimants, and was so at the time of the levy of the *fieri facias* in this case; and that there were other

outstanding claims against Edward B. Elliott, as executor as aforesaid, to the payment of which the said claimants might be subjected,—then they should find the property in controversy, not subject to the said execution:" which instruction, the Court overruled—and thereupon the plaintiffs in error excepted. And there was a verdict, and a judgment condemning the slave James to the satisfaction of the execution.

It appeared from the record, that the only issue submitted to the jury, was one whereby the plaintiff in execution, asserted that the negro man slave, was liable to the execution, levied upon him; and which was denied by the claimants, and issue taken to the country.

It was here assigned in error—

First—That the Court below erred in admitting in evidence, the decree upon which the said execution is sued.

Secondly—That the Court below erred in admitting as evidence, the *fieri facias* issued on the said decree.

Thirdly—That the Court erred in refusing the instructions prayed.

The case was argued very fully by *Crabb* for the plaintiffs in error, and by *Ellis & Peck*, contra.

COLLIER, J.—The assignments of error and the argument for the plaintiffs, assert that the decree of the County Court is too defective to authorise the issuance of an execution, and that the execution is in other respects, irregular and void. If

5 P. 24

the right of the Court to examine these questions, was untrammelled by previous decisions, it is not improbable, that we should conclude, that a void *fi. fa.* was such process, as property could not be condemned to satisfy. If an execution is so palpably defective, and for causes *appearing* on its face, or on an inspection of the judgment or decree, on which it issues, as to be void, the terms of the issue submitted to the jury, would seem to authorise the claimant of property, to avail himself of the defect; but this Court, in the case of *Collingsworth vs Horn,** and other cases, have determined otherwise; and we are contented that the doctrine of *stare decisis,* should control our opinions on this point, esteeming it of more importance that the question should be settled, than in what way it is determined.

*4 Stew. & Porter 237.

We proceed now to examine the questions arising upon the motion in the Circuit Court for instructions to the jury, and the refusal of the Court to give them. And these are—

First—Is the deed from Edward B. Elliott to the plaintiffs, founded upon a sufficient consideration?

Second—Had Edward B. Elliott such an interest in the property conveyed by the deed, as subjected it to levy and sale, to satisfy a judgment against him?

Third—Are the terms of the deed such as to make the property subject to the defendant's execution?

1st.—A principal is under a moral obligation to save his surety harmless, *if* he have the ability to

do so; and such an obligation is sufficient to sustain an express promise.*— *Worseley vs Demattos.‡*

In *Suffield vs Bruce,‡* it appeared that the plaintiff had paid the defendant the whole of a demand claimed by him, but part of which was due to a hird person. Lord *Ellenborough,* held that the de-.endant's promise to indemnify the plaintiff against the claim of the third person, was founded on a sufficient moral obligation, to render it binding, although such promise was made by the defendant, after he had received the money from the plaintiff.
/ In the case of the *United States vs Hooe,§—Fitz-gerald* was appointed a collector of the revenue, in seventeen hundred and ninety-four, and executed a bond with Hooe, as his surety for the faithful performance of the duties of his office. In seventeen hundred and ninety-nine, being largely in arrears to the United States, for monies collected, and desiring Hooe's indorsement, to enable him to draw money from the Bank, Fitzgerald executed a deed in trust, conveying certain real estate to trustees, to indemnify him against the consequences of his suretyship and indorsements. It was not denied but that the property was bound to make good to Hooe, the defaults of his principal as a collector of the revenue.

The Chief Justice, in delivering the opinion of the Court, remarks: "That the property stood bound for future advances, is in itself unexceptionable. It may indeed be converted to improper purposes, but it is not positively inadmissible. It is frequent for a person who expects to become more considerably indebted, to mortgage property to his creditor as a security for debts to be contracted, as well as for

*Chitty on Con. 10.
†1 Burr 474.
‡2 Stark R. 175.

§3 Cranch 73.

that which is already due. All the covenants in this deed, appear to the Court to be fair, legitimate and consistent with common usage." To the same effect, is *Badlam vs Tucker.**

*1 Pick. 389.

In *Marsh vs Lawrence,*† there was a conveyance of personal property, by a principal, as an indemnity, for the future liabilities of his surety, and the consideration was not questioned.‡

†4 Cowen R. 461.

‡2 D. & E. 462.

This question seems so clear upon principle as well as authority, that we *cannot* doubt but the deed bears on its face, evidence of a sufficient consideration. If the fairness indicated by the deed, be unfounded in fact, it was entirely competent for the defendant to have attacked it for extrinsic causes; but no effort of this kind was made.

2d. The interest of Edward B. Elliott, in the slave, was a *mere equity without even possession*; for one of the plaintiffs had *that*, at the time of the levy. The deed must be considered as an indemnity in the nature of a mortgage, with a power of sale to the plaintiffs; and must be scanned by those rules, which are applicable to mortgages of the personalty. Anciently, mortgages, technically so called, were confined chiefly, if not entirely, to the realty; at this day, they embrace both descriptions of property. In regard to lands, after the mortguage had become forfeit, the equity of redemption could not be sold under an execution.*

§2 Saun. R. 11-n. 17-& m.

But the law is laid down differently by Chancellor *Kent*, (in the 4th of his Com. 154,) who says that though the day of the payment of the money, intended to be secured, has past, so that the mortgage is forfeited, yet the mortgagor, "while in possession,

and before foreclosure, is regarded as the real own-
er, and a freeholder, with the civil and political
rights belonging to that character, &c." To sus-
tain this position, the learned commentator refers
to many authorities, both English and American,
which we do not deem it necessary to look into,
as we have no wish to combat the doctrine.

In the case of *M'Gregor & Darling vs Hall*,[*] this
Court, (at January term, eighteen hundred and
thirty-three,) decided that the interest of the mort-
gagor in slaves, was liable to be sold under execu-
tion, against him. The opinion of the Court does
not inform us whether the possession had been
changed or the law day had passed, nor are either
of these considered in the opinion, as material cir-
cumstances. In looking into the record, however,
we discover that the mortgagor still retained the
possession, so that in addition to a mere equity of
redemption, there was in the defendant in execu-
tion, such title as the possession could give him.
Without intending to overrule that case, let us en-
quire whether a mere equity can be reached by ex-
ecution.

*[* 3 Stew. & Porter 397.]*

In the case of *Wilkes et al vs Ferris*,[†] it was de-
termined, where property has been assigned by a
debtor to trustees, for the payment of certain speci-
fied debts, the resulting trust or residuary interest re-
maining to the assignor, after the purposes of the as-
signment, the payments of the debts are satisfied,
is not such an interest as can be taken and sold on
execution. Nor is a mere equitable title liable to
levy and sale.—*Thomas vs Marshall*.[‡]

*[† 5 Johns. R. 335.]*

In *Badlam vs Tucker et al.*[§] the Court say, "A

*[‡ Hard. 19.]*
*[§ 1 Pick. R. 399.]*

mere equitable interest cannot be taken and sold on execution; for where there is no legal right *there is* no legal remedy.    This was settled on great deliberation by the Court of King's Bench in the case of *Scott vs Scholey et al;** and the reasons there given, are entirely satisfactory."

*8 East 467.

"The judgment of the Court in that case, was sanctioned by the Court of Common Pleas in the case of *Metcalf et al. vs Scholey et al.*†—and is supported by all the authorities:" Again, "*it is only by statute, that equities or rights to redeem are subject to attachment by ordinary process.*"

†5 B & P. 467.

The Court then, after stating the creditor has a remedy in equity, and may possibly remove the incumbrance himself, concludes, "but until payment, or tender of payment of the money due to the pawnee or mortgagee of goods and chattels, it is very clear that the creditor of the pawnor or mortgagor has no remedy against them by attachment and execution."

In the case of *Marsh vs Lawrence*,‡ there was a bill of sale, or an assignment of personal property, in which the object was declared to be, to secure the vendee as the surety of the vendor.    And it was agreed that should the vendee become liable, he might turn the goods out on execution, or that they should be at his disposal at private sale, accounting to the vendor for the proceeds: the vendor retained the possession, which was held to be consistent with the deed.    The Court in the opinion delivered, say that the vendor had an equitable interest in the nature of an equity of redemption in the goods, and a right to any surplus if they were sold;

‡4 Cowen 461.

but does not consider them in judgment of law, as his property, so as to be subject to an execution against him. The Court then say, that the vendor had a mere equity, which could not thus be disposed of.

This case goes the entire length of determining that an equity of redemption of personal property, with possession in the mortgagor, can not be sold on execution. And if such be the law in New York, the Courts of that State, must distinguish between a mortgage of personal and real estate, either under the influence of a statute, or from a consideration of the dissimilar qualities of these descriptions of property. We do not deem it necessary, or even proper to go to this extent, (though we might believe such to be the law,) as this Court, in the case already cited, determined that there was no distinction in this respect, between an equity of redemption in personal and real estate, and because the case at bar is distinguishable from that, in the mortgagor having parted with the possession in favor of the mortgagees.

Without pretending then to interfere with any principle adjudged in the case of *M'Gregor & Darling vs Hall*, we are of opinion that *a mere equity unaccompanied by possession, cannot be reached by execution*, and that the interest of Edward B. Elliott being of this character, was not subject to levy and sale.

3d. The mere fact of the property being conveyed as an indemnity to the plaintiffs, as sureties of the executor of the will of John Spencer, senr. does not authorise a creditor or legatee of that estate, to

have it seized by execution, to satisfy a judgment or decree in his favor. By the conveyance and delivery to the mortgagee, it ceased to be the executors, until he freed the estate from all incumbrances and charges, with which the plaintiffs might be ultimately, chargeble as his sureties. That this had not been done, presumptively appears from the decree of the Judge of the County Court, in which near five thousand dollars are decreed to be paid to different legatees under the will; and conclusively from the execution of the defendant.

By the terms of the deed, the plaintiffs are invested with a discretion, as to the time and place of sale of the property conveyed, whenever their liability is fixed, as the sureties of Edward B. Elliott. This discretion is of importance to them, and may enable them to sell the property for a better price than it would command at a forced sale, under execution.

The motion for instructions to the jury, placed the case in the most favorable predicament for the defendant. It impliedly admitted that the property might be condemned, if there were no other demands against the executor, than the one in controversy. We do not pretend to say that this admission was not proper in point of law, but certainly, if there were other outstanding claims, the plaintiffs should not be required to forego the advantage of a sale, directed by their discretion, as to time and place, and have the property forced from them at the hazard of a loss. We are satisfied that the deed, followed as it was by delivery of the property, passed such an interest to the plaintiffs, as

is incompatible with its seizure to pay Edward B. Elliot's debts; and that there is nothing in its terms or its purpose, or the relationship of the parties, to change this conclusion.

Having considered the material questions arising in this case, we will briefly examine one or two other points, discussed at the bar, which do not influence our judgment here; but yet are worthy of notice, as settling the practice.

And first, as to the issue submitted to the jury,— this did not assert the liability of an equity of redemption to the defendant's execution, but the entire property in the slave, without incumbrance. A verdict responsive to this issue, in favor of the defendant, would have determined all interest and title in the slave, to be subject to the execution, and thus have deprived the plaintiffs of all benefit to be derived from their mortgage. And this might have been the result without any proof shewing the mortgage to be defective for extraneous causes. The issue should always conform to the nature of the interest sought to be subjected—if an equity of redemption, it should be so expressed, and if there is no qualification, it must be supposed to be the entire interest which is proceeded against.

Under the issue submitted to the jury in this case, had the slave been sold in pursuance of the verdict and judgment of the Circuit Court, and have yielded a sum, (as in all probability he would,) more than adequate to satisfy the execution, the excess under the statute, instead of going to the plaintiffs, would have went to Edward B. Elliott; and this too, though the mortgage was free from objection.* *Aik. Dig. 162 §13.

5 P. 25

For the defendant, it is insisted, that though the record may show error in the proceedings of the Circuit Court, yet this Court should not regard it, as that Court should have dismissed *the claim* of the plaintiffs, for a defect in their bond, which made it void. Without examining the bond to ascertain its sufficiency, we are persuaded that we have no right to look into errors of the inferior Court, committed against a defendant here. He cannot legalize errors committed against a plaintiff here, by shewing that had his rights been properly regarded, the plaintiffs' case could not have reached this Court.

From a view of this case, as presented, the judgment of the Circuit Court is reversed, and the cause remanded.