JOHN W. PRICE & WIFE vs. VENANCIO SANCHEZ.

1. There must be a record or inventory of the property acquired by a married woman in the Clerk's office of the county in which it is situated, within six months after its acquisition, to protect it from the husband's debts.

2. In the trial of the right of property asserted by a married woman through a purchase, there must be proof that it was made with her separate funds, otherwise the presumption is that it was through means furnished by her husband.

3. In such a trial, under the claim law, the sole issue is as to *the right of the claimant*, and he cannot object to either the judgment or execution under which the levy was made.

4. The Court will not reverse a case where the facts are not presented by a Bill of Exceptions, or there is an agreed case made in the Court below.

This case was decided at Jacksonville.

At June Term, 1854, of the Circuit Court for St. Johns County, Venancio Sanchez obtained a judgment by confession and agreement against Cornelius DuPont, for the sum of six hundred and twenty dollars. The said DuPont by his agreement waived all errors, and waived the filing of a præcipe or declaration, and the issue or service of summons. Execution was immediately issued on said judgment and was levied upon a negro boy named John, in the possession of John W. Price.

Sabina Price, wife of said John W. Price, formerly the wife of Cornelius DuPont, but from whom she had been divorced by decree rendered the first day of December, 1852, interposed a claim to the property under the statute of this State.

On the trial of the right of property, the claimant read in evidence a bill of sale from Manuel Crespo, the father of said Sabina Price, whilst she was the wife of said Cornelius DuPont, dated the 6th day of September, 1847, conveying the said negro boy John " to her and her exectors, administrators and assigns, forever." This bill of sale was recorded on the 27th day of September, 1851.

The plaintiff in execution read in evidence a mortgage executed by Cornelius DuPont, dated 24th May, 1851, mortgaging said negro boy John to him, to secure the payment of a note of the same date for fifty dollars, together with any other advances the said Sanchez might thereafter make, and all costs and charges to which he might be put. This mortgage was recorded on the 15th day of July, 1851.

The plaintiff in execution also offered and read in evidence the record of a suit in Chancery instituted by him to foreclose said mortgage, which was afterwards dismissed.

The plaintiff in execution also read in evidence a note addressed to him from said Sabina, whilst she was the wife of said Cornelius DuPont, dated November 10th, 1851, in which she says : " I understand there is some difficulty about the debt of my husband to you. I am sorry to hear it ; therefore if Mr. A. DuPont does not pay it, I will hold myself responsible for the debt by letting you have a mortgage on my black boy. I hope that you will be satisfied."

The record aforesaid of the suit in Chancery to foreclose

the mortgage, contains an account in favor of V. Sanchez against said Cornelius DuPont, for goods and family supplies furnished, beginning on the 17th day of May, 1851, and ending January, 1852, amounting to two hundred and twenty-one dollars. Of this amount sixty-eight dollars were contracted after the date of the note from the said claimant to the plaintiff in execution.

Afterwards, on the 29th of January, 1852, the said Sabina Price, then Sabina DuPont, writes to the plaintiff saying : "I have reconsidered the matter concerning that debt of Mr. DuPont's. I have concluded that I will not answer for the debt at all, for I stand in need of all the money that I can get. Therefore I must retract from my note I wrote you concerning the debt, and I hope you will excuse me, as I did it hastily, without forethought."

In her answer to the bill in Chancery aforesaid, the said Sabina alleges that " she was induced to write the note of the tenth November, 1851, by her husband, who represented to her that unless she did it he would be put in jail, and that her husband deceived her to induce her to write the paper."

Manuel Crespo, the father of the claimant, was called as a witness for the claimant, who testified that he bought the negro boy in Charleston—that he made the bill of sale of said negro boy to said Sabina, who was then the wife of Cornelius DuPont—that she had three children by said DuPont—that they lived together until some time in the summer of 1851, when they separated—that Mrs. DuPont went to live in Jacksonville in October, 1851. The possession of the boy he says was with Mrs. Price while she was Mrs. DuPont, and since.

On cross examination, he declared that he and DuPont were for a long time in business together—that in said business he became and was indebted to said DuPont—

that in settlement of accounts he at the request of said Du-Pont deeded by said bill of sale this negro boy in dispute and a woman for said debt due said DuPont, and in payment of said debt.

The Court below gave judgment for the plaintiff in execution, and the claimant appealed.

*J. P. Sanderson* for appellants.

*G. R. Fairbanks* for appellee.

BALTZELL, C. J., delivered the opinion of the Court.

This was a claim on the part of a married lady, Mrs. Price, asserting right to a negro boy John, levied upon to pay a judgment against her former husband, Cornelius DuPont. Her father, Manuel Crespo, in the year 1847, conveyed this boy John to his daughter by bill of sale regularly executed. It was not recorded until the 27th day of September, 1851, and this constitutes the principal difficulty and objection to its validity, the law of the State, enacted to secure certain rights to women, providing in its second section that "married women may hereafter become seized or possessed of real or personal property, during coverture, by request, devise, gift, purchase or distribution, subject to the restrictions, limitations and provisions contained in the foregoing section," which are "that the title to the same shall continue separate and independent and beyond the control of her husband, and shall not be taken in execution for his debts, provided, however, that the property of the female shall remain in the care and management of the husband."—Pamphlet Laws '45, p. 24; Thompson, 221.

The seventh section provides, that "all the property, real or personal, which shall belong to the wife at the time of her marriage, or which she may acquire in any of the modes

hereinbefore mentioned, shall be inventoried and recorded in the County Clerk's office of the county in which such property is situated, within six months after such marriage, or after said property shall be acquired by her, at the *peril* of *becoming liable for her husband's debts, as if this act had not been passed."—Ibid.* p. 25; Thompson, 221.

There is no ambiguity, that we can discover, in this provision. It is a clear declaration, that in case of a failure to record, the property shall be liable to the husband's debts as if the act had not been passed. What other result is to follow?—to what is the property to become liable?— what peril to be subject to, if not this? The property in contest (the title to or a description of it) in this case, the boy John not having been inventoried and recorded within the time prescribed, but some four years after the date of the deed, it follows that he is liable for the husband's debts, and that the wife may not have the benefit of this law; it is indeed to her as if it "had not been passed."

There is no proof in the record that the creditor seeking to make the property by his execution, and who is also a mortgagee of the same property, ever had notice of this bill of sale at the time of the creation of his debt or mortgage, so that the effect of notice of the title of the *feme* is not presented nor adjudicated here.

There may be hardships in this, as in other cases, from non-compliance with its provisions, but where is there exemption in the instance of any law? The same difficulty attends the provisions for the recording of deeds to land. There a purchaser who has paid for land and innocently failed to have his deed recorded, may lose it by its being sold a second time, or from its being subject to the debts of his vendor, yet the wisdom and propriety of such a provision are no longer disputed. From the relation existing between husband and wife, giving rise to the presumption

of ownership by him, persons might be tempted to buy or give credit on the faith of such possession. Frauds might be perpetrated through such means. Hence the true state of the title is appropriately required to be avowed and placed upon the record, so as to be accessible to the entire community. The title or right of the *feme* is made to depend upon this record and open avowal, and not upon the knowledge of intimate friends or conjecture or mere rumor. To leave such important rights and interests to the risk of the latter would have been unwise and improvident, so that we perceive neither harshness nor severity in the provision.

In other respects, there is a difficulty attending the claim of this *feme*. Her father deposes, " that the husband DuPont and himself were in business together, and he became indebted to him, and in settlement of accounts, he, at the request of DuPont, deeded this boy in dispute and another *for said debt* and in payment of it to said DuPont."

This presents a state of facts so nearly resembling that of Mercer vs. Hooker, decided by this Court, as scarcely to be distinguishable. In 1850, Hendrick purchased a bay horse of one Hagler, who, at the request of Hendrick, executed a bill of sale to the wife of the latter. The Court say, "to establish the title originally in Mrs. Hendrick, it was not only necessary to prove that the purchase was made for her and *with her money*, but that the property was inventoried and recorded in the clerk's office of the Circuit (County) Court within six months after said property was acquired by her."—Mercer vs. Hooker, 5 Fla., 279.

In the case of Craig vs. Gamble, this decision was reaffirmed.—*Ibid.*, 437.

" Elsewhere it is held, under a like law, that ' mere evi-

dence that she, the *feme*, purchased the property, is not sufficient to give her title. It must be satisfactorily shown that it was paid for with her own separate funds. In the absence of such proof, the presumption is violent that the husband furnished the means of payment."—18 Pennsylvania, 363; 21 do., 349.

A letter addressed by the *feme* to the execution creditor, during the time of the creation of the mortgage debt, in which she says, "she understands there is some difficulty about the debt of her husband, and she is sorry for it, therefore, if her husband does not pay it, she will hold herself responsible for the debt by letting him have a mortgage on her black boy, and she hopes he will rest satisfied," relieves the case of any high moral regard. The account was for goods, provisions, &c., furnished the family, and articles of this kind to the amount of $68 were bought after the date of this letter. Certainly as to them she could present no proper resistance. It is true she writes afterwards that "she has reconsidered the matter, and concluded that she will not answer for the debt at all, as she stands in need of all the money she can get, therefore she retracts from her note, as she did it hastily, without forethought," and alleges afterwards in her answer to a bill in chancery, that "she was induced to write said paper by her husband, who represented to her that unless she did it he would be put in jail, and that her husband deceived her to induce her to write the paper." Her second note probably gives the true account in saying that "she stood in need of all the money she can get." Certainly there is no evidence as to undue influence on the part of her husband.

We concur fully with the Court below in the opinion that the claimant could not object to defects or irregularities in the judgment or execution. This may only be done

Price and Wife vs. Sanchez.—Opinion of Court.

as to the former by the defendant on an appeal or writ of error, or in a direct motion to set aside the latter. The statute permits a claim upon oath of a party that "*the property belongs to him*," and the jury are to be sworn " to try the *right of property*"—that is whether or not the property belongs to claimant. This is the sole and simple issue, and the proof lies upon claimant. If he succeeds in showing his right, the property is released from the levy— if he fails, the execution proceeds without further obstruction from him. The proceeding is a substitute for the action of trespass or trover at common law, and differs only in its being summary and not having formal pleadings. Without this statute, a party whose property might be levied upon, would be driven to his action at law against the officer or plaintiff, the execution in the meantime having progressed to completion.

It is with regret we again have to remark upon the defective state of this record in having no bill of exceptions. As the judgment must be affirmed for want of error in this respect in any event, we have consented to treat the case as presented by counsel, an earnest request having been made that our views should be given as to the law. Had the case presented matter of error, we should not have felt justified in reversing it, even under this agreement of the parties.

Let the judgment of the Circuit Court be affirmed with costs.