## C. ROOS v. LEWYN & MARTIN.

### NO. 33.

1. **Attachment, Right to Abate.**—The right to abate an attachment on account of defects in affidavit or bond is restricted to the defendant. Goodbar v. Bank, 78 Texas, 461.

2. **Evidence—Notice—Fraud.**—A circular sufficient to put a reasonably prudent man on inquiry before dealing with the person described in it, is admissible in evidence upon the question of his good faith in a transaction, and that he had notice of the fraudulent manner in which such person acquired the property.

3. **Same—Charge of the Court.**—A charge that whatever is sufficient to put a reasonable man upon inquiry is equivalent to notice, is favorable to a defendant, when it is shown that he had knowledge of facts from which no reasonable conclusion could be drawn but that a transaction was fraudulent.

#### ON REHEARING.

4. **Abatement.**—*Held*, that the attack of the writ by virtue of which the property was seized, can only be made by a special plea in the nature of a plea in abatement, and that it must be filed in due order of pleading, and that it comes too late after an answer to the merits.

APPEAL from Bexar. Tried below before Hon. W. W. KING.

*J. H. James* and *Chas. W. Ogden*, for appellant.—1. The affidavit for attachment is fatally defective, because it fails to state that defendant was justly indebted. Evans v. Martin, 72 Texas, 250; Bank v. Flippen, 66 Texas, 611.

2. Right of claimant to question validity of writ, and as to form of judgment which should have been rendered in this case:    Webb v. Malliard, 27 Texas, 80.

3. All proceedings in attachment under defective affidavit are null and void.    Snyder v. Chambers, Dallam, 606.

4. The claimant had no right to intervene in the original suit, and this was his first opportunity to question the validity of the writ of attachment.    Ryan v. Goldfrank & Co., 68 Texas, 358.

*C. S. Robinson* and *B. L. Aycock*, for appellees.—In attachments defects can only be reached by motion made by the defendant. This is statutory. Rev. Stats., arts. 159, 180, 182; Goodbar v. Bank, 14 S. W. Rep., 851; Livingston v. Wright, 68 Texas, 706; Garrity v. Thompson, 67 Texas, 2; Drake on Attach., 6 ed., secs. 36, 112; Wade on Attach., secs. 278, 286.

NEILL, Associate Justice.—The appellees, Lewyn & Martin, brought suit in the District Court of Bexar County against Carl Von Studnitz for debt, and sued out an original attachment, which was levied on certain cigars, tobacco, etc., in the possession of appellant, who filed a claimant's affidavit and bond for trial of the right of property.

In their tender of issues the appellees alleged, that the goods levied on were the property of Von Studnitz, and as such subject to the levy of the writ of attachment issued in their suit against him; that on the —— day of November, 1888, Von Studnitz transferred his stock of goods to B. Montefure for the purpose of delaying, hindering, and defrauding his creditors, and placed them in his possession to hold for him, and that the possession of the goods both in Montefure and in appellant was in trust for Von Studnitz.    That appellees were creditors of Von Studnitz, and had obtained judgment against him subjecting the goods seized by his attachment to the satisfaction of such judment, which was for the sum of $359.17 and costs.    That appellant had notice of the fraudulent conveyance from Von Studnitz to Montefure and of the invalidity of the latter's title.

Appellant in his tender of issues pleads a general denial; that the attachment by virtue of which the goods were levied on was void on account of the insufficiency of the affidavit therefor; that Von Studnitz was justly indebted to plaintiff; and alleged especially that he was the legal and equitable owner of the property at the time of its seizure under the attachment, and that he owned and held the same by virtue of a bona fide sale to him; that he paid a full consideration for said property, and at the time of the levy was holding the same under a bill of sale from Jake Wolff.

There was no error in the court's overruling appellant's exception to the affidavit and attachment issued on it, nor in refusing to render judgment for appellant because of the alleged invalidity of the attachment.

Our statute provides that an attachment issued without affidavit and bond as the statutes provide, " *shall be* abated on *motion of defendant."* Rev. Stats., art. 159.    In accordance with this statute, the right to abate an attachment on account of defects in affidavit or bond has been restricted to defendants.    Goodbar, White & Co. v. City National Bank, 78 Texas, 461, and authorities cited.

Appellant assigns that the court erred in admitting in evidence, over his objections, the following circular:

" The world renowned Professor B. Montefure, Jr., the greatest Hebrew sight-seer and most wonderful man on the globe, now on a tour around the world, has arrived in this city, and will give private sittings (to ladies only).    He will astonish all who may call to see him.    He will give your parents' names before their marriage, the name of the gentleman whom you love and whom you are to marry.    To convince you of his marvellous powers, he will give each one desiring a sitting a free test to prove his wonderful gift.    A trial will convince you.    He can be consulted on all affairs of life, no matter what trouble.    If not satisfactory, pay refused.    For a short time only.    Number 342 Soledad Street.    Office hours, 9 a. m., 2 p. m., 3 p. m., 8 p. m.    References:    San Francisco Chronicle:    ' The most wonderful man on the globe.'    San Francisco Alta:    ' Never heard or seen his equal.'    Chicago Times:    ' He beats the world.'    Globe-Democrat:    ' He must be the second Christ.'    Denver Republican:    ' We have never seen his equal before.' "

For the reason that it had no bearing on defendant's good faith and was in its nature calculated to prejudice his rights before the jury.    It was through this circular that the great " Hebrew sight-seer " introduced and made himself known, not to " ladies only," but to Von Studnitz and the people of San Antonio when he arrived in that city on his tour around the globe, and it was proper that this man who " beats the world " should, when the question of good faith in his dealings, through which appellant claims the property, is to be determined, be introduced and made known to the jury in the same way.    If such a circular did not furnish intrinsic evidence that its subject was a scoundrel, it was sufficient to put any reasonable, prudent man on inquiry before dealing with him in any matter of importance.

Counsel for appellant in their brief do not contend that the pretended conveyance was not fraudulent, or that appellant did not have full notice of its fraudulent character before and at the time of his purchase, if indeed he purchased the goods at all.    The record abundantly establishes the fraudulency of the transaction, and that appellant, with full knowledge, attempted to share the fruits of it.    The court's charge, that whatever is sufficient to put a reasonable man upon inquiry is equivalent to notice, which is assigned as error by appellant, is favorable to him when the record shows that he had knowledge of facts from which no reason-

able conclusion could be deduced save that the transaction between the professor and Von Studnitz was as fraudulent as fraud could be.

The judgment of the District Court is affirmed.

                                                                    *Affirmed.*

Delivered October 11, 1893.


Chief Justice James did not sit in this case.


ON MOTION FOR REHEARING.

NEILL, Associate Justice.—Upon reading the argument of appellant's counsel on his motion for rehearing, we concluded that it was our duty to grant the motion and give more investigation and consideration to the questions involved than were given them in our first opinion. Since granting the motion we have examined as fully as our time would permit the questions: (1) Can one who interposes a claim in the manner provided by our statute for the trial of the right of property levied on under execution, attachment, sequestration, or other like writ, question the regularity of the writ, proceeding, or judgment upon which it is based? (2) If he can, to what extent and how can such a question be raised? (3) Was the circular set out in our original opinion admissible in evidence against the appellant?

In other States with statutes similar to ours on this subject, it is almost universally held, that the purpose of the statute is to provide a summary remedy for a stranger to the writ, who claims property levied on, to have the question of the superiority of his alleged title over the right of the plaintiff in the writ subject to the satisfaction of his execution and judgment settled, and it was never intended as a remedy against illegal or irregular writs of execution or other like process; and that therefore one who interposes a claim to property levied on by virtue of such process, who is a stranger, can not question the regularity of the writ, judgment, or proceeding upon which it is based. Baars v. Creary, 23 Fla., 311; Price v. Sanchez, 8 Fla., 136; Mosely v. Edwards, 2 Fla., 663; Fryer v. Dennis, 2 Ala., 144; Perkins v. Mayfield, 5 Port., 182; Brown v. Hart, 31 Ala., 146; Dexter v. Parkin, 22 Ill., 142; Harrison v. Singleton, 2 Scam., 21; Merrick v. Davis, 65 Ill., 319; Hill v. Harding, 93 Ill., 77; State v. Fuller, 22 Atl. Rep., 346. Under these authorities it is held, that the claimant, as a rule, can not question the execution and levy, for by his claim he admits its validity. We would have no hesitation in saying that the same construction should be given to our statute, were it not such construction is rendered doubtful by the case of Latham v. Selkirk, 11 Texas, 320, and the comments on the decision in that case by other opinions of our Supreme Court.

In Latham v. Selkirk counsel for claimant asked the court to charge the

jury, that it was necessary for the plaintiff to produce in evidence the judgment by virtue of which the execution was issued to entitle him to recover; which the court refused to give, and such refusal was assigned as error. Our Supreme Court, speaking through Judge Lipscomb, said: "It is not believed that it is available, as in trials of the right of property it is not usual to produce the judgment. And all the plaintiff in execution can be required to prove or produce on the trial of the issue made upon the claim interposed is the execution. The levy need not be proven, because it is admitted by the claim of property filed by the defendant." He then mentions several Alabama cases, and without quoting a syllable from them, says: "These authorities carry the doctrine further than we are disposed to go; in this, that they dispense with the necessity of producing the execution, and will not allow objections to be made to its validity. In carrying the doctrine so far, we can not concur, but believe that the execution may be objected to, and even the judgment, for the reasons we have given, that it is only in the character of a creditor that the bill of sale can be impeached for fraud. The claimant could have shown in defense, by certified copy of the judgment and by the execution, that there was no valid execution to establish plaintiff's character as a creditor of Betts, as it was in that character only that he could be authorized to impeach the sale from Betts to Latham, the claimant."

In regard to the rule, announced in the case just cited, requiring the production of the execution, and permitting an inquiry into the validity of the judgment, Justice Moore, in Webb v. Mallard, 27 Texas, 84, questions " whether it obtains only to the qualified extent of permitting the claimant to contest the validity of the execution so far merely as it may be necessary for the protection of his own interest in the property," but says: " It would appear, under the authority of Latham v. Selkirk, that a party in possession of property should be permitted to show that the execution under which the levy was made did not authorize a disturbance of his possession; or at least, as in such cases the burden of proof is upon the plaintiff in execution, the claimant might, for the protection of his possession, show that the execution, though valid on its face, did not in fact warrant the levy and consequent interruption of his possession. But although this may be correct, and the defendant in error was therefore authorized to question the validity of the execution under which the plaintiff was proceeding, we can not agree, as has been held by the District Court, that a judgment upon such an issue concludes the parties as to the right of property."

In that case the investigation of the jury was confined by the charge to the single point as to whether the order of sale by virtue of which the property was levied upon was invalid. The court says: " Though the jury returned a general verdict, the judgment rendered upon it in favor of

the claimant was erroneous. The court erred in confining the jury to the single issue, as it did by the charge. It should have submitted to them the question of the right of property, as well as that of the validity of the execution. And as a different judgment might be necessary upon the finding upon them, the issue as to the validity of the execution should have been presented as a separate or preliminary question. And upon a verdict in the claimant's favor upon it, a judgment should have been rendered declaring the execution insufficient to warrant the levy, and cancelling the same as to the claimant; but the right or title to the property should have been left open, so that the plaintiff might take such steps     *     *     *     as he deemed necessary to have enforced his judgment, or the lien he claims by virtue of it upon the negro hire in controversy."

In Still v. Focke, 66 Texas, 718, which was a case for the trial of the right of property levied upon by virtue of a writ of attachment, the court says: "No issue was made as to the existence of a valid writ of attachment under which the levy was made, and it would seem to us that in such case the claimant's oath and bond reciting the existence of such a writ and a levy under it would render it unnecessary to offer the writ of attachment, or a copy of it, in evidence; though in the case of Latham v. Selkirk it seems to have been thought necessary to offer in evidence the copy of an execution under which a levy was made, in order to show that the person in whose name it ran was a creditor of the person through whom the claimant asserted title, through a claim to have been made in fraud of creditors. Be this as it may, the bill of exceptions is insufficient to show that any error was committed."

In the case of Fort Worth Publishing Company v. Hitson, 80 Texas, 234, the Supreme Court, commenting upon Latham v. Selkirk, through Justice Gaines, says: "In the opinion it is said, that in cases of that character the plaintiff should introduce in evidence his writ. This dictum we are not disposed to gainsay; but we think the proposition subject to the qualification, that before the plaintiff can be required to produce his writ, its existence or validity should be *put in issue* by a *special plea* interposed for that purpose. Our statute provides, that a trial of this character shall be upon issues made up under the direction of the court. It also provides, that if the property be taken from the possession of the defendant in the writ, the burden of proof shall be upon the claimant. These provisions indicate that the Legislature contemplated that the trial should be what the name of the proceeding imports—that is to say, a trial of the right of property—and that the validity of the plaintiff's writ was not to be contested except by a special plea pointing out the grounds relied upon for showing its validity. If the plaintiff had to prove his writ in every case in which the defendant had pleaded a general denial, logically the burden of proof would be upon him in every such case. Evidently the purpose of the statute was to secure a trial of the contest as to

*the right of property*, and not of the validity of the writ; and we think it was intended that the validity of the writ should not be questioned except by a special plea setting up the grounds upon which its invalidity is claimed."

From the decisions quoted, it seems that the opinion of the court in Latham v. Selkirk, in so far as it seems to limit the rule, that one who interposes a claim to property levied on under an execution to which he is a stranger, can not question the regularity of the execution or judgment upon which it is based, which obtains in other States with statutes for the trial of the right to property similar to ours, has been "questioned," pronounced "dictum," and always been looked upon by our Supreme Court with a doubtful eye. But to our minds the proper construction of the opinion in that case is, that when one is in possession of property by virtue of a sale which is sought to be avoided upon the ground of fraud, by one who claims to be a judgment creditor of his vendor, and the property is levied upon by virtue of an execution, such writ being prima facie evidence of the existence of the relation of creditor and debtor between the parties to it, he, the party in possession, can show that such relation does not exist, by proving that the judgment upon which it issued or that the execution is a nullity, and thus protect his possession of the property; for whatever fraud there may have been in the acquisition of the property by the claimant, it is a matter of no concern to one who is not a creditor through whom the property was acquired. And we think that under that decision the invalidity of the judgment or execution can be shown for that purpose, if the question is raised at the proper time and in the proper manner, by the claimant who was in possession of the property when it was seized, in our statutory proceeding for the trial of the right of property, as well as in any other character of action where the question may arise. But without it is shown that the judgment is null and void, so that it may be attacked collaterally, the validity of the execution can only be attacked by the claimant for the protection of his possession, and a judgment in his favor on such an issue does not conclude the plaintiff from taking the proper steps to subject the property to his judgment.

We are of the opinion that the attack of the writ by virtue of which the property was seized can only be made by a special plea which is in the nature of a plea in abatement, and that it must be filed in due order of pleading, and that it comes too late after an answer to the merits.

In the case under consideration, the property was seized by virtue of a writ of attachment, valid upon its face, issued upon a demand which had been reduced to a judgment in which the attachment lien was foreclosed before the trial of the right of property took place. The judgment is not questioned, and can not be; the writ of attachment was regular upon its face, and the judgment of the court foreclosing lien on the property is

conclusive as to its validity as between the parties to the writ. Yet appellant contends that he can go behind the writ and the judgment to inquire into the validity of the affidavit upon which the writ issued, for the purpose of protecting his possession to the property, and that his right to it, which he has sworn to and gave a bond to try, is not a subject of inquiry.

It is expressly enacted, that "in all cases where any claimant of property shall fail to establish his *right* thereto, judgment shall be rendered against him and his sureties for the value of the property, with legal interest from the date of the bond." Justice Gaines, in Livingston v. Wright, 68 Texas, 707, says: "The language of the statute is positive and is without qualification, and we think it should be construed to mean what it says, and that, in the absence of fraud or collusion between the plaintiff and defendant in the writ, the claimant should not be permitted in the statutory proceeding to go behind the process and inquire into the debt upon which it is founded." If he can not inquire into the debt upon which it is founded, we do not see how he can go behind the writ, which is valid upon its face, and inquire into the sufficiency of the affidavit therefor, after the attachment lien created by the levy has merged in a judgment. The affidavit in the original suit fails to state that the defendant was justly indebted to the plaintiffs. This omission did not render the attachment void; it could only have been avoided by the defendant in the original proceedings at the proper time. He alone had the right to complain of it; and having failed to do so, the omission was cured by the judgment which established the justness of the debt. If the property had been in his possession when the levy was made, had he recovered the property, after the lien was foreclosed he could not have questioned the sufficiency of the affidavit for the purpose of protecting his possession against an order of sale. Nor do we think that the appellant could. If it was his property, as he swore it was, he could have made good his oath and bond by establishing his claim by competent testimony. If it was not, as was established upon the trial, he had no right to its possession as against appellees' right to subject it to their judgment against the party under whom appellant was in possession by a transfer, of which he had knowledge, made by Von Studnitz to defraud his creditors.

Besides, if there was any merit in his contention, he should have promptly interposed it by a special plea in abatement of the writ, and not have waited nearly twelve months after answering to the merits before pleading it.

In regard to the circular, we still hold that it was properly admitted in evidence. It was first necessary to show fraud as between Von Studnitz and Professor Montefure in the transfer of the property by the former to the latter, before charging appellant with a knowledge of it. The circular, to our minds, it being the letter of introduction of Montefure to Von Studnitz, was cogent evidence of such fraud; and that there was other

evidence of it outside of the circular is no reason why it was not admissible. It may possibly have prejudiced the jury against the appellant; but when testimony is properly admissible for one purpose that may prejudice or influence the jury on one issue to which such evidence was not pertinent, it is the duty of the party likely to be injured by it, upon the failure of the court to do so, to ask a special charge restricting the consideration of such testimony by the jury to the issue upon which it was introduced.

There is no error in the judgment of the court below, and it is affirmed.

*Motion refused.*

Chief Justice James did not sit in this case.