**JOHNSON et al. v. McDONALD et al.**

No. 2980.

Court of Civil Appeals of Texas. El Paso.

June 7, 1934.

Rehearing Denied July 5, 1934.

R. D. Blaydes, of Fort Stockton, and Mead & Metcalfe, of Marfa, for appellants.

W. B. Silliman, of Fort Stockton, and James Cornell, D. B. Hardeman, and R. G. Hughes, all of San Angelo, for appellees.

PELPHREY, Chief Justice.

J. A. McDonald, the owner and holder of a judgment for the sum of $17,569.45, recovered in cause No. 252, in the district court of Pecos county, against S. C. Johnson, applied for three separate writs of garnishment (after judgment) against the Stockton Building Association, E. H. Warnock, and Jack W. Hawkins. D. J. Sibley, on behalf of the Stockton Building Association, answered, in substance, that Johnson was the owner of 84 shares of stock in said corporation and alleged that Johnson, Warnock, and Hawkins had entered into a scheme by which the Stockton Building Association would be controlled by them and permitted to be sold out under a judgment which Hawkins held against said association. Warnock and Hawkins both denied owing Johnson anything or having in their possession any property belonging to him. These answers were controverted by McDonald, who charged that the judgment against the Stockton Building Association claimed by Hawkins and the 84 shares of stock in the association claimed by Warnock really were the property of Johnson. McDonald adopted the answer of the association and filed his petition in cause No. 252 praying that Johnson be restrained from disposing of any of the property of the association and that a receiver be appointed to take possession of such property.

A receiver was by the court appointed who took charge of the property.

Warnock was granted permission to inter-

vene in the suit, and he and Johnson both moved the court to vacate the receivership.

Sibley, as a minority stockholder, prayed that the receivership be continued and, upon hearing, the trial court continued the receivership in force. In response to special issues, a jury found that the shares of stock and the judgment were the property of Johnson at the time the writs were served, and upon these findings a judgment was rendered ordering the sale of said shares and judgment to satisfy the deficiency judgment of McDonald.

From such judgment Johnson and Warnock have appealed.

## Opinion.

■■ Appellants first complain of the fact that the court tried out the issues of Hawkins' ownership of the judgment in question after he had answered and his answer had been controverted.

We agree with appellants that under the provisions of article 4096, Revised Statutes, the court was without jurisdiction over the person of Hawkins, who lived in Reeves county, to try out the issues as to him, but we cannot agree that the court had lost jurisdiction of the subject-matter. Being a question of jurisdiction of the person, Hawkins is the only person who can here raise the question, and he has not appealed.

■ In the affidavit for garnishment against the Stockton Building Association as well as in the writ itself the association in some places was described as the Fort Stockton Building Association.

The affidavit and writ were excepted to by both appellants as being invalid because of such misdescription.

Johnson in his pleading disclaimed any interest in the stock of the association and is in no position to complain of defects in the garnishment proceedings. Dallas Packing Co. v. Kimberling (Tex. Civ. App.) 289 S. W. 149; Roberts v. Stoneham (Tex. Civ. App.) 31 S.W.(2d) 856; Roos v. Lewyn, 5 Tex. Civ. App. 593, 23 S. W. 450, 24 S. W. 538; Slade v. LePage, 8 Tex. Civ. App. 403, 27 S. W. 952.

Warnock's interest in the fund being wholly independent of the validity of the garnishment, it is not such as gives him a right to question the proceedings. Roberts v. Stoneham, supra.

We are further of the opinion that the misdescription is not of such a nature as to invalidate the garnishment. The purpose of

article 4078, R. S., in requiring the application for the writ to state the name and residence of the garnishee, is to furnish the necessary data for the issuance of the writ, and the officer in serving it. Aly v. Texas Publication House (Tex. Civ. App.) 5 S.W.(2d) 235.

In the affidavit here in question, the garnishee was correctly named in some places and, evidently through inadvertence, was incorrectly named in others. D. J. Sibley was named as president of the company upon whom service might be had and the record shows he was served and that the Stockton Building Association duly answered.

In this state of the record it is clear, we think, that the misdescription was immaterial.

The Stockton Building Association in its answer to the writ of garnishment set out that a judgment was rendered against it in favor of Jack W. Hawkins in the sum of $7,545, with interest, etc., which judgment was based upon a note executed by the association to Mrs. W. B. Silliman, thereafter assigned by her to S. C. Johnson, and later assigned by Johnson to Hawkins; that Hawkins, while the nominal plaintiff in the suit, did not own any beneficial interest in either the note or judgment, but that he was holding same for Johnson; that Johnson was acting in collusion with Hawkins at the time the suit was filed by Hawkins in pursuance of a conspiracy entered into by Johnson and Hawkins, having for its object the procuring of a judicial sale of the Rooney Hotel in Fort Stockton, Tex., same being the property of the Stockton Building Association; that after the procuring of judgment, Johnson and Hawkins had an execution issued, and placed in the hands of an officer and levied upon the Rooney Hotel and had said officer advertise the same to be sold in satisfaction of said judgment on March 7, 1933, having an agreement and understanding between themselves that such property when offered for sale would be bid in by S. C. Johnson or by some one for his benefit; that Hawkins had agreed that the amount of the bid might be credited on his judgment and that the officer conducting the sale would be requested to make a deed to S. C. Johnson, or the one by him named to bid the property in for him; that Johnson was fully aware of the prior incumbrances against the property, of the condition of the property, and that because of the financial depression it was unlikely that any one else could or would bid for the property at the sale; that Johnson, being the

beneficial owner of the note upon which judgment was rendered and of the judgment in favor of Hawkins, thus designed to secure the title to the Rooney Hotel, and thus defeat payment of unsecured creditors of the association and render worthless the shares of stock therein held by D. J. Sibley and John W. Rotan; that being thwarted in their efforts in accordance with their scheme by reason of an injunction issued by the court and the enactment of the Moratorium Law, Johnson and Hawkins contrived to secure the legal title to the property of the association, by having Johnson, as holder of a majority of the stock of the association, call a meeting of all stockholders of the association for March 10th at the Rooney Hotel, for the purpose of naming a manager of the hotel and to elect a board of directors; that the stockholders at the time of such notice were Johnson, Sibley, and Rotan; that such meeting, if held, would have been dominated by Johnson acting in concert with one or more to whom he might for such purpose transfer shares of stock in the association; that if such meeting was permitted to be held, after the election of directors, officers would be named and Johnson being vested with apparent control and authority would convey to Hawkins, or to some one agreed upon by Hawkins and Johnson, the legal title to the properties of the association, including the Rooney Hotel, in pretended consideration of the satisfaction of the Hawkins judgment, and by such means, if not restrained, they would render the collection of the debts owing to other creditors by the association impossible and the shares of stock owned by Sibley and Rotan worthless.

After the court had appointed a receiver upon the application of McDonald, Sibley made application to stay the execution of the Hawkins' judgment, and to have the then receiver either continued in his position or to have him reappointed. In this application Sibley alleged that Warnock was the owner of a majority of the stock in the association as well as of the Hawkins judgment; that to satisfy the judgment he had had execution levied upon the real properties of the association; that he, if not prevented, intended to have the property sold thereunder; that in such event the property would sell for less than the amount of the judgment, thereby rendering his and Warnock's stock worthless; and that Warnock had a conflicting interest in the matter and was desirous that the property sell for less than the amount of his judgment so that he might in such manner acquire title to the property and destroy the rights of all stockholders. Then follow allegations following the provisions of what is known as the "Moratorium Law." Hirst, the then receiver, joined Sibley in his application.

■ The trial court was clearly in error, we think, in appointing a receiver upon the application of McDonald. He was not a creditor of the association, had no interest therein, and we have found no authority for the creditor of a stockholder of a corporation having a receiver appointed for such corporation.

■ No appeal was taken from the original appointment, however, and if Sibley was entitled to have a receiver named for the association, then the continuing of the receivership upon his application would not be error.

It is conceded by appellee that the appointment of the receiver was not ancillary to any other action and therefore was not made under the general equity powers of the court.

■■ Article 2293, Revised Statutes, provides for the appointment of a receiver of a corporation where the corporation is insolvent or in imminent danger of insolvency, or where it has been dissolved or has forfeited its corporate rights. The association here had not been dissolved nor had it forfeited its corporate rights; therefore, if Sibley was entitled to have the receivership continued in force, under the statute, it was incumbent upon him to allege and prove that the association was either insolvent or in imminent danger of becoming so.

In the answer of the writ of garnishment which Sibley filed for the association and upon which the court evidently appointed the receiver originally, the allegation was made that the properties of the association were valuable and had an intrinsic value in excess of the amount owed by the association.

In his application to have the receivership continued in force, Sibley alleged that the properties of the association were not being wasted, ill treated, mismanaged, or destroyed. While these are facts in the answer to the writ of garnishment which might tend to show that the association was in imminent danger of insolvency, yet we find that Sibley, by his own allegations, denies the existence of such a condition.

Be that as it may, the injunction which was granted by the court, and from which no appeal was taken, afforded ample protection against the evils complained of and there was no need for the court exercising its extraordinary power to appoint the receiver.

Furthermore, it appears that Warnock had agreed with the other stockholders to make no effort at that time to collect his judgment. This being true, the appointment of a receiver was not necessary to prevent the sale of the property to satisfy the Hawkins judgment. The receivership should therefore be vacated.

◼◼◼◼ Among the issues submitted to the jury were these:

"Special Issue No. 1: Do you find from a preponderance of the evidence in this case that the judgment that Jack W. Hawkins held in his name against the Stockton Building Association at the time the writ of garnishment in this case was served on him, to-wit: March 10th, 1933, was owned by S. C. Johnson?

"Special Issue No. 2: Do you find from a preponderance of the evidence in this case that the eighty-four shares of stock in the Stockton Building Association that E. H. Warnock held in his possession at the time the writ of garnishment in this case was served on him, to-wit: March 13th, 1933, was owned by S. C. Johnson?"

These two issues were answered in the affirmative by the jury, and appellants now attack such findings as being unsupported by the evidence and contend that the court erred in rendering judgment in conformity therewith.

Hawkins, in whose name the judgment was had on the note, testified that he and Barney Hubbs put up $1,000 and got the note and the 84 shares of stock as security for it; the note was put up as collateral and transferred to him at the time of the loan to secure the money he and Barney Hubbs had loaned.

This testimony, we think, was sufficient to support the finding of the jury on the issue as to the ownership of the judgment at the time the writ was served and also justify the giving of plaintiff's requested charge No. 4.

As to the ownership of the 84 shares of stock in the association, however, we feel differently. We have made a diligent search of the statement of facts, and the only thing which would tend to show that the sale by Johnson to Warnock was a simulated transaction, is the fact that possibly the consideration might prove to be inadequate.

This, of course, would not prevent the passing of title and, besides, the inadequacy depended upon developments which might arise in the future.

We have concluded that there was no evidence sufficient to support the finding of the jury that the 84 shares of stock belonged to Johnson at the time of the service of the writ of garnishment, and therefore the judgment decreeing the stock to belong to Johnson and foreclosing a lien thereon in favor of McDonald should be reversed. We also fail to find any evidence in the record which would support the jury's affirmative answer to issue No. 2 that the transfer of the stock from Johnson to Warnock was made for the purpose of delaying, hindering, and defrauding Johnson's creditors.

It is not contended here by appellee that the correspondence between the American National Insurance Company and Johnson and Blades pertaining to a plan for a foreclosure of the lien held by the insurance company was admissible for any purpose other than upon the question of the receivership; therefore, in view of our holding on that matter the question would be immaterial.

After a complete examination of the entire record we have reached the conclusion that the order appointing the receiver was erroneous and that such receivership should be vacated; and that the judgment decreeing the ownership of the 84 shares of stock to be in Johnson and foreclosing a lien thereon in favor of McDonald should be reversed.

The judgment of the trial court is accordingly reversed, and the cause remanded, with instructions to the trial court to vacate the receivership and for such other and further proceedings as may be necessary and not in conflict with our above holdings.

## On Motion for Rehearing.

Both parties have filed motions for rehearing and express some doubt as to the proper procedure to be followed in the court below.

Appellees have requested that we clarify our opinion so as to expressly affirm the judgment of the trial court as to the ownership of the Hawkins' judgment.

Appellants, on the other hand, complain of our holding on that issue and request a general reversal of the judgment by reason of the introduction of the correspondence with the American National Insurance Company and the trial court's refusal to strike out the various allegations contained in the answer of the Stockton Building Association and repeated in appellees' application for a receiver.

The above evidence and allegations were, we think, properly before the court on the question of the appointment of a receiver, but the admission of the correspondence

should have been limited to that question, as requested by appellants.

While the evidence was sufficient to support the finding that the Hawkins' judgment belonged to appellants, yet it can readily be seen that the correspondence and the facts surrounding it might have influenced the jury to so find.

We have concluded that the judgment should be reversed generally and the issues retried in accordance with these holdings.