Fahy et al. v. Gordon et al., Appellants.

### In Banc, March 17, 1896.

1. Practice: demurrer. Where plaintiffs, having the burden of proof, introduce testimony sufficient to discharge it, and defendant also draws out a fact which entitles plaintiffs to recover under the terms of a document offered in evidence by plaintiffs, held, that the trial court may then instruct the jury to render a verdict for plaintiffs.

2. **Chattel Mortgage, Record of.** A chattel mortgage to be properly recorded must be filed in the county of the mortgagor's residence.

3. **Chattel Mortgage:** ATTACHMENT: LIEN: EQUITY OF REDEMPTION. A levy of attachment upon the "equity of redemption" in goods previously conveyed by chattel mortgage is not permissible, and confers no lien, as against the right of the mortgagee to possession, after condition broken. This rule certainly applies to property which is only salable on execution when the levying officer can obtain and deliver possession for purposes of sale.

4. ————: ATTACHMENT: REPLEVIN: SALE: EXCESS OVER DEBT. Where property under chattel mortgage is replevied from an officer holding it under attachment writs, and afterwards the mortgagees sell same for a sum in excess of the debts secured, the defendant officer in the replevin action is not entitled to a judgment for that excess; although, in some circumstances, parties holding special or partial interests in personalty may be protected by a judgment under the claim and delivery (or replevin) act.

5. ————: PRACTICE. The legal effect of a chattel mortgage is a matter of law to be determined by the court.

6. **Practice:** PRESUMPTION: RULING OF TRIAL JUDGE. The legal presumption *omnia rite acta* applies to the rulings of a trial judge until removed by some showing; and if the record will fairly bear a construction supporting the judgment, that construction will be given to it.

7. ————: ISSUES: ADMISSIONS. Parties may, by admissions at the trial, narrow the issues made by the pleadings.

*Appeal from Polk Circuit Court.*—HON. ARGUS COX, Judge.

AFFIRMED.

*Rechow & Pufahl* and *Upton & Skinker* for appellants.

(1) This being an action at law, and every material fact which the plaintiffs were required to prove to make out their case being disputed by the defendants, it was error for the court to take the case from the jury and instruct them to find the issues for the

plaintiffs. "Whether the plaintiffs were entitled to recover, depended upon the sufficiency and weight of the evidence. It was not for the court but the jury to pass upon the sufficiency and weight of the evidence." *De Graw v. Prior*, 53 Mo. 313; *Paxson v. Pierce*, 25 Mo. App. 59; *Desberger v. Harrington*, 28 Mo. App. 632. (2) Slight circumstances, no matter how trivial, are often sufficient to establish fraud. We submit that in this case there was ample evidence to justify the jury in finding the mortgage fraudulent. *Burgert v. Borcher*, 59 Mo. 80; *Van Raalte v. Harrington*, 101 Mo. 602; *Fredrick v. Allgaier*, 88 Mo. 598. (3) The plaintiffs were not entitled, in any event, to recover more than the value of their special interest in the property in controversy. And as it was admitted on the trial that they had sold the property for about $700 more than the amount of their mortgage, the instruction of the court requiring the jury to find for the plaintiffs for all of the property was clearly erroneous. Defendants were entitled to this surplus under any view of the evidence. "In replevin the court should make an equitable and complete adjustment of all the rights of the parties to the action." *Dilworth v. McKelvey*, 30 Mo. 149; *Boutell v. Warne*, 62 Mo. 350; *Jones v. Evans*, 62 Mo. 382; *Daugherty v. Cooper*, 77 Mo. 535; *Dodd, Brown & Co. v. Wilson*, 26 Mo. App. 462; *Hickman v. Dill*, 32 Mo. App. 509; *Baldridge v. Dawson*, 39 Mo. App. 527. All of the above cases establish the doctrine that when, on the trial of a replevin suit, it is developed that plaintiff is not the general owner, but has only a special interest, such as mortgagee, pledgee, or part owner, and the defendant has an interest in the property, the court will apportion the property, if it be susceptible thereof, and proceed to settle all the rights, equities, and priorities of the parties.

*Goode & Cravens* for respondent.

(1)   The plaintiffs were entitled to a peremptory instruction to the jury to return a verdict in their favor. The evidence showed without any conflict that the plaintiffs were entitled to possession of the property sued for.   The answer did not even plead fraud in the mortgage, or make any point against the plaintiffs' right, except a general denial.   *Clemen's Adm'r v. Dryden's Adm'r*, 6 Mo. App. 597.   (2) The chattel mortgage was properly recorded in Greene county, since the place to put a chattel mortgage to record is in the county of the mortgagor's residence.   R. S., sec. 5176; *Bevins v. Bolton*, 31 Mo. 437.   (3)   *First.* If the mortgagees secured open and notorious possession before the writs of attachment were levied, they were entitled to hold the property against attaching creditors, regardless of whether the instrument was recorded at all or not. R. S. 1889, sec. 5176; *State ex rel. v. Cooper*, 79 Mo. 464; Jones on Chattel Mort. [3 Ed.], sec. 178.   *Second.* Possession was voluntarily delivered by Williams, and if it had not been, the mortgagees were entitled to take it on several grounds; notably, because several of the debts were due at the time, and, by the terms of the instrument this rendered them all due, for the purpose of making the mortgage available.   Besides, the mortgage contained a provision that whenever the mortgagees deemed themselves insecure, they might take possession, and the testimony shows that they did consider themselves insecure at the time.   Such provision authorizes a mortgagee to take possession whenever in his judgment he thinks it best.   Jones on Chattel Mort. [3 Ed.], sec. 431; *Cline v. Libby*, 46 Wis. 123; *Huebner v. Keobke*, 42 Wis. 319; *Smith v. Post*, 1 Hun (N. Y.), 516; *Fox v. Kitton*, 19 Ill. 519; *Evans v. Gra-*

*ham,* 50 Wis. 450; *Braley v. Byrnes,* 21 Minn. 483; *Werner v. Bergman,* 28 Kan. 60; *Gage v. Wayland,* 67 Wis. 566; *Bank v. Taylor,* 67 Iowa, 572; *Roy v. Kings,* 96 Ill. 361. *Third.* Such clause vests in the mortgagee an absolute discretion to take possession whenever he may deem himself insecure, and the exercise of the right does not depend on whether there is reasonable ground for his believing himself insecure. Jones on Chattel Mort., *supra. Fourth.* Being so entitled, he may maintain an action of replevin against anyone who detains the property, or trover for the conversion, and may take possession without a previous demand. *Frisbee v. Langworthy,* 11 Wis. 375; *Welch v. Sackett,* 12 Wis. 243; *Grove v. Wise,* 39 Mich. 161; *Harvey v. McAdams,* 32 Mich. 472; *Huggans v. Fryer,* 1 Lans. (N. Y.) 276. (4) *First.* Mortgagees of personalty are entitled to possession, and may maintain replevin after condition broken against the mortgagor, a stranger to the mortgage, or a sheriff seizing the property under writ of attachment or execution. *Turner v. Langdon,* 85 Mo. 438; *State to use v. Carroll,* 24 Mo. App. 358; *Mfg. Co. v. Chrisman,* 28 Mo. App. 308; *Keck v. Fisher,* 58 Mo. 532; *Thompson v. Foerstel,* 10 Mo. App. 290; *Wangler v. Franklin,* 70 Mo. 659; *St. Louis Drug Co. v. Robinson,* 81 Mo. 18. *Second.* And in such case, where the officer seizes goods in possession of the mortgagees, they may maintain replevin against him for their recovery, whether the mortgage debt be due or not. *Hausmann v. Hope,* 20 Mo. App. 193. (5) *First.* Defendants are not entitled to have the surplus left after paying the mortgage debts out of the proceeds of the property adjudged to them in this case. Unless the mortgage was fraudulent so as to give them a lien on the property superior to it, they acquired no lien on anything at all by their attachments, for when the mortgagee is in possession after condition broken, the mortgagor has no

such interest in the property as is subject to attachment or execution. *State to use v. Carroll,* 24 Mo. App. 358; *Brown v. Hawkins,* 54 Mo. App. 75; *Bank v. Metcalf,* 29 Mo. App. 391; *Barnett v. Timberlake,* 57 Mo. 501; *Mattison v. Baucus,* 1 N. Y. 293; *McDonald v. Beemans,* 58 N. W. Rep. 704. *Second.* In this state the mortgagee, in such cases, has always been held to be the absolute owner of the property. *King v. Bell,* 8 Mo. 332; *Yeldell v. Stemmons,* 15 Mo. 443; *Boyce, Adm'r, v. Smith's Adm'r,* 16 Mo. 317; *Rogers v. Lidwell,* 8 Mo. App. 600. *Third.* The mortgagee being in possession of the mortgaged property, the creditors of the mortgagor have no right to interrupt that possession without first satisfying the mortgage debt. *Hausmann v. Hope,* 20 Mo. App. 193. *Fourth.* Creditors can not reach the mortgagor's equity of redemption in a chattel by attaching the chattel. *Poundstone v. Holt,* 37 Pac. 35.Rep.

BARCLAY, J.—This is an action in the nature of replevin for a large quantity of merchandise, the contents of a store.

Plaintiffs assert title to it under a chattel mortgage, claiming to have taken possession also. Defendant was the sheriff of Polk county, who had the property in custody when the action was begun.

In view of the nature of some of the questions mooted, it seems desirable to mention certain details of the proceedings.

The parties are "John Fahy, W. C. Kelton, Moses W. Kelton, R. A. Williams, Commercial Bank, Springfield, Missouri, and Jake Marx," plaintiffs, against "Benjamin F. Gorden, sheriff of Polk county," defendant.

The petition, after alleging incorporation of the bank, asserts that plaintiffs are owners, and entitled to

possession, of specific personal property (describing it), and that the defendant, as sheriff, has seized the same under writs of attachment against Jacob A. Williams, and wrongfully detains the property from plaintiffs. The property in dispute is alleged to be of the value of $4,000. 1,000 dollars damages for the taking and detention thereof are demanded, as well as judgment for the recovery of the property, with costs.

The petition is supplemented by the affidavit prescribed by the claim and delivery act.    Chap. 137, R. S. 1889.

Following the terms of that act, plaintiffs obtained an order of delivery, and got possession of the disputed property.    Afterwards the latter was sold as described further on.

The answer denies the allegations of the petition; and then states that the described property belonged to J. A. Williams and was in possession of defendant as sheriff under attachment writs in favor of creditors of Williams; "that plaintiff as against these defendants has no right, title or interest in, or to said property;" and then a claim is made for $300 damages for the taking of the property under the order of delivery, followed by a prayer for the return of the property.

There was a trial at the close of which the court gave an instruction directing the jury to find for plaintiffs and to assess plaintiffs' damages for the taking and detention of the property at one cent.    The jury found as directed, and judgment went to the same effect.

Defendant appealed, after the necessary steps for that purpose.

The foremost question here is whether or not the trial court erred in giving the peremptory instruction for plaintiffs, over defendant's objection.

The case was this:

The plaintiffs offered in evidence a bill of sale in

the nature of a chattel mortgage by Jacob A. Williams to the six plaintiffs, conveying the property in suit to secure various items of indebtedness to the plaintiffs respectively, or to secure payment of items for which they were sureties for said Jacob.

The instrument was dated January 6, 1891, acknowledged the same day and recorded in the records of Greene county the next day. That document is lengthy; but it need not be largely quoted. Its general effect was to convey title immediately to the grantees to secure them in their demands against Jacob A. Williams, and it authorized them to take possession at any time in case they should "deem themselves insecure."

Mr. Fahy, one of plaintiffs, testified that the mortgage was executed by the grantor at Springfield, Missouri, and delivered to witness on the day of its date; that he had it recorded in Springfield, the next morning; that he and the other secured creditors decided to send a man down to Aldrich at once to take possession of the property; that the grantor resided in Springfield, where his family were, but he did business at Aldrich in Polk county. He told witness he wanted to secure the creditors named. Accordingly an attorney was consulted, and the mortgage was executed as described. Mr. Cox, an employe of witness, was sent on the morning of the 7th to take possession of the goods for the mortgagees. Williams, the mortgagor, went along by the same train. The father of the mortgagor (who is named in the mortgage as one of the secured creditors) was found at Aldrich in charge of the store, aided by a sister of the mortgagor.

After the present action was begun, the goods were sold (part by auction and part at retail) for about $3,175 by the mortgagees or their agent in charge. The amount realized is claimed by defendant to be in excess of the obligations secured by the mortgage.

Mr. Cox testified for plaintiff that he went to Aldrich, as stated by the first witness, took possession of the stock of goods, including groceries, boots, shoes and clothing; that he had possession from Tuesday, January 7, 1891, until the following Sunday when the attachment writs were levied by defendant, who took possession then. Witness locked the store on the 7th, having gotten the keys from the mortgagor, and he attended to the sale of the goods for plaintiffs' account after they had been retaken by the order of delivery in the present action.

. Mr. Cox did not have the mortgage with him when he went to Aldrich. That document was then in Springfield, presumably for the purpose of being recorded, as it was filed on the 7th of January, the day on which Mr. Cox started to Aldrich, at a very early hour in the morning.

It was admitted that defendant, the sheriff, had the goods in charge when they were taken under the writ or order of delivery in the pending suit.

Plaintiff then rested.

Defendant introduced evidence to show the items of indebtedness secured to the various plaintiffs by the mortgage, viz:

*Note by mortgagor*, $500. Dec. 26, 1890, at 90 days, to the Bank.
    "        "    $500. Nov. 6, 1890, 120 days, to Bank.
    "        "    $129.64, January 3, 1891, 1 day, to Kelton Stove Co.
    "        "    $790.05, January 5, 1891, 1 day, to Fahy.
    "        "    $188, Dec. 1, 1888, demand, to R. A. Williams.
    "        "    $200, Sept. 26, 1890, 120 days, to Bigbee, cashier.
    *Account*, $48.60, June 2, 1890, to Marx.

Defendants then read a deposition of Mr. Fahy which requires no special notice, further than a remark that it is therein stated that Williams "resided in Springfield most of the time, but he lived in Fair Play about two or three months;" and that afterwards he was in business in Aldrich about three or more years;

and that for the last year or two he had had personal charge of the store there.

Defendant then introduced considerable evidence in regard to the change of possession of the property covered by the mortgage.

Mr. Reed, who went with the sheriff to attach the goods, testified for defendant, that when they reached Aldrich they went to Williams' house and told their mission. Cox was there; said he had the goods in charge and refused to give up the keys to the goods. After dinner, witness and defendant went to the store, pushed in the door, and took some of the goods across the street.

To quote the witness: "Williams and Cox were both there and came in the house. Williams said they were his goods and he would show us whose goods they were before we got through with it. Cox was present."

Defendant testified that he went to Aldrich to levy the attachment. He then continued thus: "Cox claimed to be in possession of the goods and Williams claimed the goods to be his; he said the goods were his. Cox said he had the keys to the store. I tried to persuade him to give them up but he didn't do it. This was J. A. Williams who also claimed the goods."

Mr. White, for defendant, testified that he too was with defendant when the writs were levied; that the house was locked and Cox claimed he had the keys; saw Williams there at the time, more than once.

In rebuttal, Messrs. Cox and Fahy were recalled, but the only facts of any consequence then elicited were that the mortgagor had been in business at Aldrich for himself during the summer of 1890, but had been previously running the store in the name of R. A. Williams, his father (one of the creditors preferred by the mortgage).

Mr. Fahy also stated that the balance due to him and secured by the chattel mortgage was $790.05; that his only object in the transaction was to secure the debt, and, so far as he knew, the only purpose of the mortgagor was to protect those secured creditors.

So much we gather from the abstract filed by defendant, appellant, in this court.

The case came here upon a mere certified copy of the judgment and order of appeal, as permitted by section 2253 (R. S. 1889). There is no transcript of the record before the court. Our only authorized information of the proceedings in the circuit court is derived from the printed abstracts furnished pursuant to the section just cited and the eleventh rule of this court.

From the supplemental abstract filed by plaintiffs, respondents, it appears that the debtor, Jacob A. Williams, testified as a witness to the fact of his residence in Springfield, as well as to other matters.

Defendant has not filed any further abstract in reply, so we assume respondents' abstract correct.

The foregoing presents the substance of the case so far as concerns the points raised on this appeal.

1. The pleadings raised the issue of plaintiffs' title to the property, and the burden of proof was upon them to show their right to possession as against defendant. The question is, did they discharge themselves of that burden in such a conclusive manner as to render the finding or verdict a mere sequence of law? The learned trial judge held that they did, by directing a verdict for plaintiffs, upon which the judgment appealed from was rendered.

The plaintiffs' own testimony tends to show that their title is derivative. On January 6, 1891, it was vested in Jacob A. Williams. Plaintiffs depend on an alleged transfer of title by him. They claim, first, by

the terms of the mortgage; and, secondly, by virtue of taking possession thereunder.

The first of these claims (if it stood alone) would in part depend on the fact that that instrument had been duly recorded in the county of the mortgagor's residence. Sec. 5176, R. S. 1889. If, on the other hand, his residence is found to be at Aldrich, then plaintiffs fall back to the position that the taking of possession, by their agent, dispensed with the legal necessity of recording the mortgage. To sustain that contention it would be essential for them to prove such a complete transfer of possession from the debtor as would satisfy the requirements of the law, bearing on the rights of his attaching creditors. R. S. 1889, secs. 5176 and 5178.

The plaintiffs must by proof successfully maintain one, at least, of the positions above indicated in order to warrant a finding in their favor. They offered oral testimony tending to support both. On the question of Mr. Williams' place of residence, Mr. Fahy gave positive testimony tending to prove plaintiff's contention.

Now, if Mr. Williams gave on behalf of defendant the testimony quoted in plaintiffs' abstract, the trial court was entirely right in treating the fact of his residence at Springfield as established. Whatever might be held as to the effect to be ascribed to uncontradicted oral evidence of a disputed fact (touching which, the views of the writer were given in *Schroeder v. Railroad*, 1892, 108 Mo. 322, 18 S. W. Rep. 1094), none of us doubt that where a material fact, essential to plaintiffs' case, is also drawn out by defendant in the course of his evidence and is otherwise uncontradicted, that fact may properly be treated by the court as established for the purposes of the trial and an instruction may therefore be properly based upon it.

There is no reason why parties may not, by admissions at the trial, remove from the domain of controversy facts which have been put in issue by the pleadings.

The abstracts before us 'do not state in whose behalf Mr. Williams was sworn as a witness, though his evidence is given at considerable length. But it devolved on the appellant to show error in the proceedings under review. We should assume, until the contrary is made to appear, that the rulings of the learned trial judge are free of fault. In the absence of a showing of some fatal blemish his proceedings are protected by the legal presumption of correct official action.

We take it, therefore (in the absence of any different showing, and in support of the judgment) that Mr. Williams' testimony was offered by defendant, and hence that the fact of his residence in Greene county was established by both parties.

Assuming the chattel mortgage duly recorded in the county of the mortgagor's residence, the legal effect of the instrument then was a question of law only, which it was the province of the court to determine. The instrument was properly authenticated and recorded, and its condition (as appears from the dates of the obligations secured) was broken as soon as made. According to its terms the mortgagees were entitled to immediate possession. There being no evidence of fraud of any sort in its procurement or design, and defendant's possession of the goods at the time of the order of the delivery in this action having been expressly admitted at the trial, the proper finding in the case became a mere conclusion of law.

The first position of plaintiffs having been maintained, it was not necessary to consider (or need we now consider) the question of change of possession of the

property. That issue could only become important when the mortgage had been found not duly recorded.

The trial court correctly instructed the jury to find for plaintiffs, unless the next objection urged to that result is maintainable.

2. It is insisted by defendant that as the mortgagees realized from the sale of the goods (after they had been taken by the writ herein) a sum in excess of the secured claims, the defendant was entitled to judgment for that excess, at least.

It was established law in this state, when this suit was begun, that a levy upon the so-called "equity of redemption" of the mortgagor in a chattel mortgage (after condition broken) is not permissible as against the rights of the mortgagee to possession of the goods conveyed. *Yeldell v. Stemmons* (1852) 15 Mo. 443; *Boyce's Adm'r v. Smith's Adm'r* (1852) 16 Mo. 317.

This is certainly the law of Missouri yet as to goods such as those in question here, which are only subject to regular sale on execution by the defendant sheriff in event the latter officer could lawfully acquire possession so as to transfer and deliver same to the purchaser. *Knox v. Hunt* (1853) 18 Mo. 243.

The levy by defendant did not put the latter in the place of the mortgagor with reference to this property, under existing law.

In some circumstances parties holding special or partial interests in personalty may be protected by the judgment allowed under the flexible procedure of the statutory action authorized by the claim and delivery act, as has been held in *Gillham v. Kerone* (1870) 45 Mo. 487, *Boutell v. Warne* (1876) 62 Mo. 350, and other cases.

But a sheriff, representing merely an attaching creditor at large, does not occupy such a position toward the mortgagor as to permit the former (the

sheriff) to successfully claim, in a case like this, the residue of the proceeds of a sale of mortgaged personal property, after the secured demands are satisfied. If such funds can be reached by the sheriff, it is not by the mode attempted in this case. *Haenschen v. Luchtemeyer* (1871) 49 Mo. 51.

No equitable defense has been interposed in this action. The defendant claimed possession and damages, and no question as to any supposed equity in favor of defendant need be discussed, because no such question was raised by the pleadings or otherwise in the circuit court.

The attachment created no lien on the goods as against the rights of the plaintiffs, the mortgagees after condition broken, if the instrument under which the mortgagees claim, is valid. *King v. Bailey* (1843) 8 Mo. 332. There is nothing in the record here to show that it is not.

It follows that the circuit judgment should be affirmed. It is so ordered with the concurrence of Chief Justice BRACE and Judges GANTT, MACFARLANE, BURGESS, and ROBINSON; Judge SHERWOOD taking no part.